(No. 39797.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* THEODORE J. ISAACS *et al.,* Appellees.

*Opinion filed March 29, 1967.—Rehearing denied. May 16, 1967.*

206

208

WARD, J., took no part.

RAYMOND L. TERRELL, State's Attorney, of Springfield, (LAURIN A. WOLLAN, JR., Assistant State's Attorney, of counsel,) for appellant.

HARRY J. BUSCH and JACOB SHAMBERG, both of Chicago, and HUGH J. GRAHAM, JR., of Springfield, for appellee Theodore J. Isaacs.

GEORGE J. COTSIRILOS, of Chicago, for appellee John J. Lang.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

This is an appeal by the State of Illinois from an order of the circuit court of Sangamon County quashing and dismissing thirty-four counts of a thirty-five-count indictment charging defendants Theodore J. Isaacs and John J. Lang with various offenses. Cook Envelope and Lithographing, Inc., an Illinois corporation, is charged with offenses as a co-defendant in some of the counts and is charged alone in count III. However, since no appearance on its behalf has ever been made, the circuit court did not

act upon the indictment with regard thereto, and insofar as the counts under consideration here affect the corporation, they are not in issue on this appeal. Thirty-three counts are made the basis of the appeal, the People having confessed error as to count XXI. Constitutional questions relating to the sufficiency of several counts bring the cause directly to this court. Ill. Const., art. VI, sec. 5; Rule 28—1.

Counts I, IV, VIII and IX, which the parties have denominated the "less detailed Section 75 counts", charge defendant Isaacs with knowingly and unlawfully acquiring, obtaining and holding a direct pecuniary interest in certain specifically described contracts entered into by the State of Illinois and Cook Envelope and Lithographing, Inc., an Illinois corporation, pursuant to which the latter was to furnish and supply the former with envelopes, printing and paper. It is alleged in all of these counts that Isaacs occupied, during the times of the commission of the offenses sought to be charged therein, a position as an officer and employee of the State of Illinois, to-wit: Director of the Department of Revenue. It is further averred in each count that the payments for the materials to be furnished under the contracts were to be satisfied from funds appropriated by the General Assembly. Defendant Lang is charged in counts I and IV as having aided and abetted defendant Isaacs in the planning and commission of the offenses charged therein while an employe of the State of Illinois, to-wit: Superintendent of Printing in the Department of Finance.

The first paragraph of section 12 of the act relating to State contracts (Ill. Rev. Stat. 1963, chap. 127, par. 75), pursuant to which these counts are brought, provides: "Except as herein otherwise provided, it shall be unlawful for any person holding any elective state office in this state or a seat in the General Assembly or any person employed in any of the offices of the state government or the wife, husband or minor child of any such person to have, acquire,

obtain or hold any contract, whether for stationery, printing, paper or for any services, materials or supplies, which will be wholly or partly satisfied by the payment of funds appropriated by the General Assembly of the State of Illinois, nor shall any such person have, acquire, obtain or hold any direct pecuniary interest in any such contract provided, however, that payments made in behalf of a public aid recipient shall not be deemed payments pursuant to a contract with the state."

It is apparent that the counts now under consideration are brought pursuant to the second clause of the first paragraph of section 12, for nowhere else in the paragraph is language employed proscribing the acquisition of a "direct pecuniary interest" in a State contract.

The defendants maintain that these counts are constitutionally insufficient under section 9 of article II of the Illinois constitution, requiring that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him, in order that he will have such specific designation of the offense charged as to enable him to prepare his defense and to plead a judgment of acquittal or conviction thereon in bar of a subsequent prosecution for the same offense. *People* v. *Brown,* 336 Ill. 257; *People* v. *Flynn,* 375 Ill. 366.

Consistent with this constitutional requirement, it has long been a rule of law in this State that where the language of the statute defining an offense so far particularizes such offense that by its use alone the accused is notified with reasonable certainty of the precise offense with which he is charged, an indictment drawn substantially in the language of the statute is constitutionally sufficient. (*People* v. *Blanchett,* 33 Ill.2d 527; *People* v. *Sims,* 393 Ill. 238.) However, it is equally well settled that "where the statute creating the offense does not describe the act or acts which compose it, they must be specifically averred in the indictment or information." (*People* v. *Brown,* 336 Ill. 257, 258-59.)

Here, it may fairly be said that these counts, as to the interest alleged to have been obtained, are drawn substantially in the language of the above statute, for it is alleged in each count that defendant Isaacs "did knowingly and unlawfully have, acquire, obtain and hold a direct pecuniary interest" in the State contracts therein specified. The question to be determined by this court is, therefore, whether such language sufficiently particularizes the nature of the offense sought to be charged so as to bring these counts within the rule authorizing charges couched in substantially statutory terminology. If so, defendants' constitutional contention is without merit. If not, the cases adhering to the rule in *Brown* are controlling, and the trial court's order was correct. If the constitutional requisite is met in this case, section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1963, chap. 38, par. 111—3) which was enacted to satisfy the mandate that an accused be adequately notified of the offense with which he is charged, is also sufficiently complied with.

The People in contending these counts are not defective as vague and uncertain rely principally on *People* v. *Adduci,* 412 Ill, 621, where this court dealt with the predecessor of present section 12 of the act relating to State contracts. The pertinent section then provided, *inter alia,* that State officers and employees were precluded from becoming "directly or indirectly" interested in certain State contracts. (Ill. Rev. Stat. 1951, chap. 127, par. 75.) After upholding the constitutionality of this statutory language against a contention of vagueness and uncertainty, the court upheld an indictment brought pursuant thereto. That indictment, however, charged the defendant with an offense not only in the language of the statute, but also specifically alleged the type of interest in the contract that defendant was charged with having obtained, *i.e.,* that he was paid a large amount of money as a commission in connection with the contract. The counts under consideration here charge only the ac-

quisition of a "direct pecuniary interest", and although the People urge that such distinction is of no consequence, we believe it manifest that the interest alleged in *Adduci* was measurably more specific than the interest alleged here. In our opinion, therefore, that case is not controlling.

Defendants rely upon cases such as *People* v. *Peters,* 10 Ill.2d 577, where this court held that an information alleging that the accused on a certain day in a certain county, as a resident of the State of Illinois not authorized to practice law "did then and there unlawfully, knowingly and wilfully represent himself as authorized to practice law" was constitutionally insufficient to state an offense. The statute pursuant to which the information was brought provided: "That any person residing in this state not being regularly licensed to practice law in the courts of this state, who shall in any manner hold himself out as an attorney at law or solicitor in chancery or represent himself either verbally or in writing, directly or indirectly, as authorized to practice law, shall be deemed guilty of a misdemeanor". (Ill. Rev. Stat. 1953, chap. 38, par. 298.) The court held that since the statute did not define or describe the acts constituting the offense created thereby, a charge couched substantially in the statutory language should have been dismissed. Similar cases are *People* v. *Chiafreddo,* 381 Ill. 214; *People* v. *Green,* 368 Ill. 242; *People* v. *Flynn,* 375 Ill. 366; *People* v. *Barnes,* 314 Ill. 140.

After a thorough consideration of the foregoing authorities, we believe that the statute pursuant to which these counts are brought, proscribing a certain class of individuals from acquiring a "direct pecuniary interest" in certain State contracts, does not by that language sufficiently define or describe the acts composing the offense so that an indictment couched substantially in the language thereof is constitutionally sufficient. While the People argue that "direct pecuniary interest" is reasonably specific, it cannot be denied that there are many types of such interests that the

statutorily included class might acquire in State contracts. Without more specific particularization of the "direct pecuniary interest" alleged to have been obtained by an accused, he has no way of knowing with what he is charged. It may well be that the particular interest considered by the grand jury is not a "direct pecuniary interest" as envisaged by section 12, and an indictment charging the acquisition of such interest would be quashable as a matter of law. If the interest is not averred with greater specificity than was employed here, defendants might be forced to go to trial unnecessarily.

Our disposition of counts I and IV as to defendant Isaacs necessarily requires the determination that they are also insufficient as to defendant Lang, who is charged as having aided and abetted defendant Isaacs in the commission of the offenses sought to be charged therein.

The trial court's order quashing counts I, IV, VIII and IX, is, for the foregoing reasons, affirmed.

We now come to a consideration of counts VI and VII, which the parties have denominated the "detailed Section 75 [12] counts". Each of these counts charge defendant Isaacs, while occupying a position as a State officer and employee, with obtaining a direct pecuniary interest in a certain specified State contract for envelopes between the State of Illinois and Cook Envelope and Lithographing, Inc., an Illinois corporation. Count VI further alleges that on the contract date defendant Isaacs "was entitled to and owned 25% or more of the outstanding common stock of the said Cook Envelope and Lithographing, Inc." Count VII further presents that defendant Isaacs was on the contract date "entitled by contract and stock ownership in said Cook Envelope and Lithographing, Inc. * * * to more than 7½% of the total distributable income of said Cook Envelope and Lithographing, Inc.".

Section 12 of the act relating to State contracts provides in pertinent part:

"Except as herein otherwise provided, it shall be unlawful for any person holding any elective state office in this state or a seat in the General Assembly or any person employed in any of the offices of the state government or the wife, husband or minor child of any such person to have, acquire, obtain or hold any contract, whether for stationery, printing, paper or for any services, materials or supplies, which will be wholly or partly satisfied by the payment of funds appropriated by the General Assembly of the State of Illinois, nor shall any such person have, acquire, obtain or hold any direct pecuniary interest in any such contract provided, however, that payments made in behalf of a public aid recipient shall not be deemed payments pursuant to a contract with the state.

"It shall also be unlawful for any firm, partnership, association or corporation from which any such person shall be entitled by contract, stock ownership or otherwise, to receive more than $7\frac{1}{2}\%$ of the total distributable income thereof to have, acquire, obtain or hold any such contract or direct pecuniary interest therein.

\* \* \*

"Any person found guilty of a violation of this section shall upon conviction be fined not to exceed $2,500. As amended by act approved July 15, 1959. L. 1959, p. 1237."

It is the State's position that stock ownership, to the extent alleged in these counts, constitutes a direct pecuniary interest in the contracts of the corporation in which the stock is held, and if a person within the included class of the first paragraph of section 12 is entitled to more than $7\frac{1}{2}\%$ of the total distributable income of a corporation which enters into a contract with the State, such individual is personally subject to prosecution. We do not so read section 12. The first paragraph declares that it shall be unlawful for a certain class of people to obtain direct pecuniary interests in certain State contracts. The second paragraph declares that it shall be unlawful for any firm, part-

nership, association or corporation from which any of that same class of persons shall be entitled to receive more than $7\frac{1}{2}\%$ of the total distributable income to hold or obtain any direct pecuniary interest in certain State contracts. In no way does section 12 purport to equate any stockholding interest in a corporation with a direct pecuniary interest in that corporation's State contracts and thus subject the stockholder to personal liability. While the State argues that to construe section 12 as not subjecting such stockholder to personal liability in a case where the corporation would manifestly be subject to a penal sanction cannot have been the intent of the General Assembly and in fact serves to thwart the public policy inherent in the statute, we must remember that we deal here with a penal statute and must construe it strictly in favor of the accused. (*People* v. *Eagle Food Centers, Inc.* 31 Ill.2d 535.) It might well have been thought by the General Assembly that sanctions only against the corporation in situations arising under the second paragraph would constitute a sufficient protection to the State, for it is apparent that by amending section 12 to substitute the acquisition by a State officer or employee of a "direct pecuniary interest" in a State contract for the former language which precluded such persons from becoming "directly or indirectly interested" in such contracts, the General Assembly has substantially narrowed the scope of the statute. We therefore hold that section 12 does not impose personal liability upon a stockholder of a corporation which, under the second paragraph thereof, unlawfully holds or obtains a direct pecuniary interest in a contract with the State. The trial court's order quashing and dismissing these counts as to defendant Isaacs was correct.

Cases cited by the People concerning the competency of witnesses under the Dead Man's Act (Ill. Rev. Stat. 1963, chap. 51, par. 2) are inapposite, as are those cases decided under statutes proscribing the acquisition of a direct or indirect interest in State contracts similar to the predecessor

of section 12 considered by this court in *People* v. *Adduci,* 412 Ill. 621.

Count II purports to charge defendants Isaacs and Lang, and Cook Envelope and Lithographing, Inc., with conspiracy, under section 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1963, chap. 38, par. 8—2) to violate the heretofore discussed portion of section 12 proscribing a State employee's acquisition of a direct pecuniary interest in a State contract. Such count charges, insofar as relevant here, that defendants Issaacs and Lang, employees of the State of Illinois, and Cook Envelope and Lithographing, Inc., committed the offense of conspiracy, in that they, with intent to violate that portion of section 12 making it unlawful for any employee of the State to acquire a direct pecuniary interest in any contract for stationery, *etc.,* knowingly and unlawfully agreed with each other and with others to commit said offense, and in furtherance of said agreement Cook Envelope and Lithographing, Inc., entered into a certain specified·contract with the State.

Defendants say that this count wholly fails to allege that as an object of the conspiracy, a particular State employee was to acquire a particular direct pecuniary interest in the contract specified, and that thus the count is fatally defective as containing insufficient averments of fact. The People say that it is unnecessary to aver with particularity the State employee who is to acquire a particular direct pecuniary interest, citing *People* v. *Beeftink,* 21 Ill.2d 282. In that case, the defendants were indicted for the offense of conspiracy to commit burglary in that they unlawfully agreed together "to commit a felony, to-wit: Burglary, to-wit: to feloniously, burglariously, wilfully, maliciously and forcibly break and enter into certain buildings" situated in the county of Cook, and to feloniously steal, take and carry away personal goods, chattels, money and property of divers persons contained in said buildings. The court stated that this count was sufficient to charge the offense of

conspiracy and that it was unnecessary to describe the particular buildings which, as an object of the conspiracy, were to be burglarized. However, it is clear from a reading of that case that the court was of the opinion that the burglary statute was sufficiently specific so that a valid indictment for that offense could be drafted in the language of the statute defining burglary. Here, we have held that in order to charge a violation under the pertinent paragraph of section 12, since it does not describe or define the acts which constitute an offense thereunder, it is necessary to aver them with specificity. Accordingly, *Beeftink* is not authority here for the sufficiency of this count.

We believe that, in order to adequately charge defendants with conspiracy to violate that portion of section 12 proscribing State employees from obtaining a direct pecuniary interest in certain State contracts, it is necessary to allege as an object of the conspiracy that a State officer or employee is to obtain a particular type of direct pecuniary interest in a State contract, and not an indirect interest by way of an interest in distributable income of the corporation, for it must be ascertainable from a reading of the indictment, as was the case in *Beeftink,* that the object of the alleged conspiracy is in fact criminal. While it is not necessary in a conspiracy count to describe the criminal offense which is the object thereof with the same precision as would be requisite in an indictment for that offense alone (*Beeftink,* p. 290), a charge that alleges, in the language of section 12, that certain State employees agreed together and with others to violate the portion of section 12 forbidding a State employee's acquisition of a direct pecuniary interest in a State contract does not sufficiently apprise the defendants of the offense with which they are charged, and would not enable them to plead in bar a judgment of acquittal or conviction in a prosecution for the same offense. The order of the trial court quashing count II is correct.

Count X charges, insofar as pertinent here, that defend-

ants Lang and Isaacs along with Cook Envelope and Lithographing, Inc., committed the offense of conspiracy in that they, with intent to violate that portion of section 12 making it unlawful for any corporation to have, acquire or hold any State contract for the purchase of stationery, printing, *etc.* or to have any direct pecuniary interest therein, when any person employed by the State, shall be entitled to receive more than 7½% of the total distributable income of said corporation, knowingly and unlawfully agreed to commit said offense. An overt act by Cook Envelope and Lithographing, Inc. is alleged to have been committed in furtherance of the conspiracy.

This count charges that, as an object of the alleged conspiracy, a corporation of the prohibited class is to either acquire a State contract *or a ·direct pecuniary interest therein*. Since we have held the emphasized language not sufficiently specific so as to allow its use in stating the object of a conspiracy, count X must fall for the same reason as count II.

Counts XIII, XIV, XV, XVIII, XIX, XX, XXII, XXIII and XXIV charge defendants with conspiracies under section 46 of division I of the old Criminal Code (Ill. Rev. Stat. 1961, chap. 38, pars. 139, 140), which all parties hereto agree was repealed as of January 1, 1962, (Ill. Rev. Stat. 1963, chap. 38, par. 35—1). The People maintain, however, that these defendants may nevertheless be charged thereunder at the time of this indictment. It is the law of this State that conspiracy is deemed to be a continuous offense (*People* v. *Walsh,* 322 Ill. 195), and we have previously held that every overt act in furtherance of a conspiratorial agreement is a renewal of the conspiracy and that the Statute of Limitations begins to run from the date of the commission of the last overt act. (*People* v. *Drury,* 335 Ill. 539, 552; *People* v. *Blumenberg,* 271 Ill. 180.) The People take this to mean that even though a

conspiracy statute is repealed, if the alleged conspirators continue to commit overt acts in furtherance of the original agreement, they may be brought to trial at any time within 18 months (the applicable Statute of Limitations) from the date of the commission of the last overt act. Thus, if a conspiratorial agreement were consummated prior to the repeal of the statute, and overt acts were committed after the repeal but within 18 months of the agreement or any earlier overt act, the offense would be prosecutable at any time within 18 months from the date of the last such overt act. This argument is without merit. Where a statute defining an offense is repealed, conduct prohibited thereby no longer constitutes an offense, and subsequent overt acts which would have ordinarily commenced anew the running of the Statute of Limitations while the statute was in force cannot resurrect the prosecutability of conduct which no longer amounts to an offense. While we have held that a prosecution pursuant to a repealed statute may be timely brought to punish a violation thereof occurring while such statute was in force, (*People* v. *Tanner,* 27 Ill.2d 82), we have never indicated that a prosecution might properly be brought pursuant to a repealed statute after the Statute of Limitations has run as to any offenses committed while the statute was in force. Sections 139 and 140 were repealed as of January 1, 1962. The Statute of Limitations would have run as to all offenses committed thereunder as of June 30, 1963. No indictments were returned prior thereto, and these counts were properly quashed.

Counts XXV through XXIX and counts XXXI through XXXIV seek to charge defendant Lang with offenses under section 4 of the act relating to State contracts. (Ill. Rev. Stat. 1963, chap. 127, par. 67.) Defendant Isaacs, along with Cook Envelope and Lithographing, Inc., is charged with having aided and abetted defendant Lang in the commission of the offenses therein sought to be charged.

Section 4 provides: "If any officer or employee of the Department of Finance shall, by himself or through others, corruptly collude or have any secret understanding with any person to defraud the State of Illinois, whereby the State shall sustain a loss, he shall, on conviction thereof, forfeit his office or employment and be imprisoned in the penitentiary for a term of not less than one (1) or more than five (5) years, and fined in a sum not exceeding three thousand dollars ($3,000), and, the sureties upon his official bond, if any, shall be bound for the amount of any fine which may be assessed and fixed under this section."

Counts XXV and XXX charge substantially in the language of section 4 that defendants Isaacs, Cook Envelope and Lithographing, Inc. and defendant Lang, an employee of the Department of Finance, violated the laws of Illinois relating to State contracts in that they knowingly and unlawfully corruptly colluded and had a secret understanding with each other to defraud the State, and as a result of such conduct the State suffered a loss. Isaacs and Cook Envelope and Lithographing, Inc. are thereafter charged with aiding and abetting defendant Lang in the commission of said offense.

Section 4 manifestly does not describe the particular act or acts which compose an offense thereunder, and in accordance with the views expressed earlier in this opinion a charge pursuant thereto must therefore specifically aver acts and conduct of those charged with the commission of the offense. Counts XXV and XXX merely generally charge the defendants in the language of section 4. The trial court properly quashed such counts.

Counts XXVI through XXIX, and counts XXXI through XXXIV charge defendants in the language of section 4, and specifically aver at length conduct in which defendants have allegedly engaged. Thus count XXVI charges defendants with knowingly causing the State to

enter into a specifically described contract with Cook Envelope and Lithographing, Inc. while knowing that a contract could have been consummated with a named responsible bidder that would have supplied the materials specified therein for a lesser charge, whereby the State suffered a monetary loss. Isaacs and Cook Envelope and Lithographing, Inc. are thereafter charged as having, with the intent to promote and facilitate the commission of the offense, solicited, aided, and abetted defendant Lang in the planning and commission of the same. Counts XXVII, XXVIII, XXIX, XXXI, XXXII, XXXIII, and XXXIV are similarly specific with regard to allegations of fact.

We believe these counts are sufficiently specific so as to notify defendants of the offenses with which they are charged, and thus they should not be quashed on the basis of vagueness and uncertainty. The counts charge defendant Isaacs and Cook Envelope and Lithographing, Inc. with having aided and abetted defendant Lang in the commission of the offenses substantially in the language of the statute defining principles of accountability. Ill. Rev. Stat. 1963, chap. 38, par. 5—2.

It is argued that section 4 is a special penal statute applying only to employees of the Department of Finance, and that since each count does not charge that Isaacs was an employee of the Department of Finance at the times specified therein, such counts do not charge him with an offense. We agree that section 4 is a special statute applying to employees of the Department of Finance. This means that persons without the defined class cannot be held principally liable as having aided and abetted an employee of the Department of Finance in the commission of an offense which inevitably involves participation of more than one person. Section 5—2 of the Criminal Code of 1961 dealing with accountability provides:"* * * a person is not so accountable, unless the statute defining the offense provides

otherwise, if: \* \* \* (2) The offense is so defined that his conduct was inevitably incident to its commission \* \* \*". While this court has heretofore recognized that a person, not encompassed within the class of people included in the statute defining the offense, may nevertheless be accountable for an offense thereunder and be punished as a principal offender, (*People* v. *Damen,* 28 Ill.2d 464; *People* v. *Trumbley,* 252 Ill. 29, 35,) the statute in those cases did not involve an offense which by its definition required action of more than one person.

Counts XXV, XXVI, XXVII, XXVIII, XXIX, XXX, XXXI, XXXII, XXXIII and XXXIV charged defendants Isaacs, Cook Envelope and Lithographing, Inc., a corporation, and Lang (said Lang being an employee of the Department of Finance of the State of Illinois) "committed the offense of a violation of the laws of the State of Illinois relating to State of Illinois contracts in that they, knowingly and unlawfully corruptly colluded and had a secret understanding with each other to defraud the State of Illinois, a body politic, whereby as a result of said corrupt collusion and secret understanding as aforesaid the State of Illinois sustained a loss, etc.", contrary to section 4 of "An Act to revise the law in relation to State contracts," as amended, (Ill. Rev. Stat. 1965, chap. 127, par. 67), which provides that "If any officer or employee of the Department of Finance shall, by himself, or through others, corruptly collude or have any secret understanding with any person to defraud the State of Illinois, whereby the State shall sustain a loss, he shall, on conviction thereof, \* \* \*".

Collusion is defined by Bouvier as "an agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law," and in similar terms by other legal dictionaries. *Dickerman* v. *Northern Trust Co.,* 176 U.S. 181, 190, 44 L. Ed. 423, 430.

"The term [collusion] is synonymous with conspiracy,

and it is obvious and manifest that to constitute collusion more than one mind must be involved." 11 C.J. 1221.

To "corruptly collude" is synonymous with having a "secret understanding," since "collusion" is also defined to mean "a secret agreement." 15 C.J.S. 348.

Both by the terms of said section 4 and definition, the word "collude" expressly contemplates participation by more persons than the employee of the Department of Finance, and the alleged conduct of persons charged other than the employe is inevitably incident to the commission of the offense charged in the said counts.

While the said counts allege that the defendants, other than Lang, "did solicit, aid, abet, agree and attempt to aid the said John J. Lang in the planning and commission of the said offense," since the offense is "collusion," which term is synonymous with "conspiracy," there can be no solicitation, aiding, abetting, agreeing or attempting to aid in the planning and commission of the offense, without participation in the primary sense, and the conduct of each participant is inevitably incident to the commission of the offense of "collusion."

Since the alleged conduct of defendants, other than Lang, was inevitably incident to the commission of the offense charged, it falls within the exclusion found in section 5—2(c)(2) of our Criminal Code which provides that a person is not accountable unless the statute defining the offense provides otherwise, if the offense (with which the other party is charged) is so defined that his (the excluded party's) conduct is inevitably incident to its commission.

In the Committee Comments, S.H.A. Statutes, chap. 38, par. 5—2, it is said that "* * * sub-sections (c)(1) and (c)(2) do not prevent the extension of liability to such persons by provision in the particular statutes if this is desired. Thus, if it be decided that a bribe-taker should be treated as guilty of bribery, this can be provided in the bribery section. All that is done in these provisions is to

state the rule that persons falling under sub-sections (c)(1) and (c)(2) are not guilty if there is no specific provision to the contrary."

Section 4 is not contrary to section 5—2(c)(2), since section 4, dealing, as it does, with more than one person and not having provided a penalty for any person other than the employee of the Department of Finance, has made no specific provision to the contrary.

The legislature having, in section 4, expressed the thought that the officer or employee of the Department of Finance would engage in activity with other person or persons, and having had in mind that other person or persons would be involved, and, not having included therein such other person or persons, it has, by the expression of only the officers or employees of the Department of Finance, excluded the other person or persons.

In *Ex parte Cooper*, 162 Calif. 81, 121 Pac. 318, the Supreme Court of California in construing the statute proscribing adultery held that an unmarried female person who had cohabited with a married male, could not even under principles of accessoryship and accountability, be convicted of the offense of adultery.

In California at that time the offense of adultery was limited to married persons, and that case excluded her conviction as an accessory because she was a participating party. *Cooper* is, therefore, an authority for the position that persons in the participating class defined in a statute and omitted from the penalty in the statute may not be prosecuted under the accountability concept.

We must distinguish penal statutes which by their terms define offenses which may be committed by act of a single participant, from penal statutes, such as section 4, which define offenses dependent upon acts of more than one person. With regard to the former type of penal statute, there may be accountability, but with regard to the latter type of penal statute, there can be only primary participation,

and there is responsibility only when the latter type of penal statute specifically provides responsibility against all participants. Section 4 does not specifically provide responsibility against others than employees of the Department of Finance, and, as indicated, persons other than such employees are not liable under accountability provisions.

It is argued that the "Act to revise the law in relation to State contracts" (Ill. Rev. Stat. 1963, chap. 127, par. 64 *et seq.*) has been impliedly repealed by the Illinois Purchasing Act (Ill. Rev. Stat. 1963, chap. 127, par. 132.1 *et seq.*) and that thus section 4, a part of the former act, no longer defines an offense.

The former of these acts deals specifically with the manner of purchasing stationery, printing, and paper for the State, and implements section 25 of article IV of the Illinois constitution requiring, *inter alia,* the General Assembly to provide by law that such material shall be purchased by the letting of contracts to the lowest responsible bidder on such contracts. Section 5 of the Illinois Purchasing Act provides that "All purchases, contracts or other obligations or expenditure of funds by any State agency shall be in accordance with rules and regulations governing such State agency procurement practices and procedures which it shall promulgate and publish * * * for distribution to person interested in bidding on purchases or contracts to be let by such state agency." It is provided that such rules and regulations shall be filed in accordance with the provisions of the act relating to rules and regulations of the State's agencies, (Ill. Rev. Stat. 1965, chap. 127, par. 263 *et seq.*) and that such rules and regulations shall be approved by the Department of Finance.

It will be seen immediately that the Illinois Purchasing Act is general in nature and is broad enough to encompass all purchases by State agencies, while the "Act to revise the law in relation to State contracts" deals only with a limited subject matter, the manner of purchasing stationery, print-

ing, and paper for the State. We have previously held that "where two statutes treat upon the same subject, the earlier being special and the later one general, unless they are irreconcilably inconsistent, the latest in date will not be held to have repealed the former, but the special act will prevail in its application to the subject matter coming within its particular provision. (*Rosehill Cemetery Co.* v. *Lueder,* 406 Ill. 458, 466-467; *Village of Ridgway* v. *Gallatin County,* 181 Ill. 521, 526." (*City of Champaign* v. *City of Champaign Township,* 16 Ill.2d 58, 67, 68); see also Sutherland, Statutory Construction, Vol. 1, sec. 2021 (1943) and cases cited thereunder.) Moreover, repeal by implication is not favored, and even if there is an apparent inconsistency between two laws, they will be construed, insofar as possible, so as to preclude an implied repeal of the earlier by the later. See *Village of Glencoe* v. *Hurford,* 317 Ill. 203, 215-16; *Dugan* v. *Berning,* 11 Ill.2d 353, 358; *People ex rel. Lunn* v. *Chicago Title and Trust Co.* 409 Ill. 505, 510-12.

We do not believe these acts are so inconsistent with each other as to require an implied repeal, and it clearly was not the intention of the legislature that a repeal occur, for the "Act to revise the law in relation to State contracts" has been amended many times subsequent to the enactment of the Illinois Purchasing Act.

It is further urged that the section 4 counts are defective in failing to allege the amount of the loss sustained by the State. We cannot agree; each sustained count avers a monetary loss, and some further state that the grand jurors are unable to further particularize the amount. The amount of loss is clearly a matter of evidence and it is unnecessary to aver it with specificity in the indictment.

It is claimed that section 4 was repealed by the enactment of section 33—3 (official misconduct) of the Criminal Code of 1961, effective as of January 1, 1962, and thus no prosecution could be brought pursuant thereto at the time

of the return of this indictment. We do not agree. The Committee Comments under section 33—3, which we have held are instructive in determining legislative intent, (*People* v. *Blanchett*, 33 Ill.2d 527, 532) say that "Section 33—3 codifies a variety of provisions of similar import found in Illinois Revised Statutes 1959, chap. 38, pars. 449, 464". Section 4 is not included therein, and we believe it has not been repealed by section 33—3.

The People maintain that these charges are timely brought although June 15, 1961, is more than three years prior to the return of the present indictment. It is averred in each count where deemed necessary that June 15, 1961, is within the period within which a prosecution for these offenses may be commenced, in that the offenses are based upon misconduct in office by a public officer or employee and that the State's Attorney of Sangamon County, the proper prosecuting authority, first discovered and became aware that the offenses had been committed less than one year from December 16, 1964.

Section 3—6(b) of the Criminal Code of 1961, which became effective as of January 1, 1962, provides: "(b) A prosecution for any offense based upon misconduct in office by a public officer or employee may be commenced within one year after discovery of the offense by a person having a legal duty to report such offense, or in the absence of such discovery, within one year after the proper prosecuting officer becomes aware of the offense. However, in no such case is the period of limitation so extended more than 3 years beyond the expiration of the period otherwise applicable."

It is urged that section 3—6(b) is not applicable here for the reason that it refers only to prosecution for offenses brought under section 33—3 of the Criminal Code of 1961, denominated "Official Misconduct". It is maintained that the language "misconduct in office" in section 3—6(b) must be taken to refer only to "official misconduct"

as defined in section 33—3. We cannot accept this argument. If the drafters of the Criminal Code had meant to restrict the operation of section 3—6(b) to prosecutions brought for the substantive offense, "Official Misconduct", they could have easily employed the same terminology in both sections. We believe the phrase "prosecution for any offense based upon *misconduct in office by a public officer or employee* may be commenced * * *" (emphasis added) was meant to provide for extended limitations for all prosecutions for breaches of fiduciary obligations of public officers. The Committee Comments bear this out: "Subsection 3—6(b) attempts to deal with the problem of the public official who commits misconduct in office, which has been more widely recognized in the statutes than that of the private offender. In addition to the states which have the more general provisions mentioned above, and those in which embezzlement and related offense are accorded special treatment without distinction between the public official and the private offender, several states prescribe a period which is longer for an official than for a private offender * * * Illinois had no statute recognizing the limitation problem as to either public officials or private offenders in offenses involving fraud or a breach of fiduciary obligation, except the provision considered below, concerning the exclusion of the official's tenure of office from the period of the limitation in embezzlement cases. Some such recognition, however, seems advisable in view of the comparatively short (3 year) general limitation in this State; and, with respect to public officials, in view of the recent disclosures of large-scale embezzlements, some of which were discovered only several years after the offenders left public office."

It will be observed that the comments refer to a three-year Statute of Limitations, and offenses committed under section 33—3 are misdemeanors and ordinarily subject to an eighteen-month period of limitation. (Ill. Rev. Stat. 1963, chap. 38, par. 3—5). This strengthens the conclusion

that section 3—6(b) is more pervasive in scope than defendants maintain.

In our opinion, section 4, which manifestly involves a breach of fiduciary obligation of a Department of Finance employee, is within the contemplation of section 3—6(b). But even if this is so, it is argued section 3—6(b) is of no moment here for the reason that it is not retrospective in application. (It did not become effective until January 1, 1962, and these counts charge offenses on June 15, 1961.)

This court has earlier observed: "Statutes of limitations are measures of public policy only. They are entirely subject to the will of the legislature, and may be changed or repealed altogether in any case where a right to acquittal has not been absolutely acquired by the completion of the [original] period of limitation. Such a statute is an act of grace in criminal prosecutions. The State makes no contract with criminals at the time of the passage of acts of limitations that they shall have immunity from punishment if not prosecuted within the statutory period." *People* v. *Buckner,* 281 Ill. 340.

Of course, it is the intent of the General Assembly which controls the determination of the question of retrospective application, and this intent may be ascertained not only from the language employed by the new statute but also from a consideration of the evil to be remedied thereby. (*Orlicki* v. *McCarthy,* 4 Ill.2d 342.) As stated in the Committee Comments referred to above, the drafters of this legislation deemed it wise to provide for an extended period of limitations concerning prosecution for misconduct in office because of the likelihood that such misconduct would not be discovered while the guilty person held office and even for some time thereafter. While it is true that section 3—6(b) does not expressly provide for retrospective application, we do not believe the General Assembly intended to immunize, upon the running of the former limitations period, persons guilty of misconduct in office which had

not been discovered at the time this legislation was enacted but which was then still subject to prosecution. We accordingly hold that section 3—6(b) applies retrospectively.

Count XII seeks to charge defendants with conspiracy (section 8—2 of the Criminal Code of 1961) to violate section 4, earlier referred to. The object of the conspiracy is alleged as that conduct proscribed by section 4, and is couched substantially in the statutory language. As previously stated, we do not believe section 4 sufficiently describes the act or acts which compose a substantive offense thereunder, and in accordance with our views expressed elsewhere in this opinion, count XII is insufficient to charge the offense of conspiracy to violate section 4.

The People have averred in each count in this indictment where deemed necessary "that the period within which the prosecution in this case must be commenced does not include the period between December 16, 1964, and April 28, 1965, in that an indictment was returned by the Sangamon County Grand Jury against these defendants on December 16, 1964, which said indictment constituted a prosecution against these same defendants for the same conduct as is charged in this indictment, and which said indictment remained in full force and was pending in the circuit court of Sangamon County until April 28, 1965."

It is said that this averment is insufficient to preclude the consideration of such period in that the disposition of the prior indictment for these same offenses is not specifically pleaded. We cannot agree, for the Criminal Code of 1961 (Ill. Rev. Stat. 1965, chap. 38, par. 3—7(c)) indicates that the period within which a prosecution must be commenced does not include the period during which a prosecution was pending against the same defendants for the same conduct, even if the indictment which commenced the prosecution was quashed or the proceedings thereon were set aside. We do not believe this language requires the People to allege in the new indictment the particular

disposition of the original indictment. The salient requirement is that it allege the tolling of the Statute of Limitations on the basis of the pendency of prior proceedings against the same defendants for the same conduct. The cases of *Lamkin* v. *People,* 94 Ill. 501 and *Swalley* v. *People,* 116 Ill. 247, referred to a tolling statute which differed substantially in terminology from section 3—7(c) and are therefore inapposite. If a defendant maintains that prior proceedings constitute a bar to the instant indictment, he must specifically so plead.

Counts XVI and XVII charge defendants Isaacs and Lang, along with Cook Envelope and Lithographing, Inc., with the offense of conspiracy to violate sections 33—3(c) and 33—3(b) of the Criminal Code of 1961. The objects of the alleged conspiracies are set forth substantially in the language defining the offense, which we believe does not sufficiently specify the act or acts which compose offenses so as to authorize indictments couched in statutory language for substantive offenses thereunder. Accordingly, in an indictment for conspiracy to commit such offenses, it is necessary to allege more than agreements to violate the statute in the language thereof. Our comments as to counts II, X, XXV and XXX are also applicable here, and the circuit court did not err in quashing.

Defendant Isaacs, as to count XII which seeks to charge a conspiracy to violate section 4, argues that under section 8—3 of the Criminal Code of 1961 he may not be charged as sought by the People. Section 8—3 provides: "It is a defense to a charge of solicitation or conspiracy that if the criminal object were achieved the accused would not be guilty of an offense."

Since we have held that persons other than employees of the Department of Finance are not subject to prosecution under section 4, count XII which seeks to charge a conspiracy to violate section 4 cannot be sustained as to defendant Isaacs.

Count V charges defendants Isaacs and Lang, along with Cook Envelope and Lithographing, Inc., with the offense of conspiracy to violate the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1961, chap. 120, pars. 440-453) whereby it is unlawful for any persons to engage in the business of selling tangible personal property at retail in the State of Illinois, without a certificate of registration from the Department of Revenue (paragraph 441a) in that they unlawfully agreed together and with others to commit such offense. Overt acts by Cook Envelope and Lithographing, Inc. are alleged to have been committed in furtherance of the commission of the offense.

Count XI charges defendants Isaacs and Lang along with Cook Envelope and Lithographing, Inc. with conspiracy to violate that portion of the Retailers' Occupation Tax Act requiring the making of a return to the Department of Revenue of the State of Illinois (par. 444). The corporation is charged with having committed overt acts in furtherance of the conspiracy.

Charges under the provisions of the Retailers' Occupation Tax Act for failure to obtain a certificate of registration and for failure to file returns substantially in the language of the statute defining the offenses require allegation that the defendant engaged in the business of selling tangible personal property at retail without registration or without filing returns. A count which undertakes to charge a conspiracy to engage in the business of selling tangible personal property at retail and fail to register or file returns under the Retailers' Occupation Tax Act, while substantially in the language of the statute defining the offenses, must charge who, as the object of the conspiracy, was to engage in the business of selling tangible personal property at retail.

Counts V and XI do not charge who, as the object of the conspiracies, was to engage in the business of selling

tangible personal property at retail. These counts, therefore, are defective.

Count XXXV charges defendant Lang alone with the offense of official misconduct (section 33—3) in that he with the intent to obtain a personal advantage for one Theodore J. Isaacs, performed an act in excess of his lawful authority in causing the State to enter into a contract for the purchase of envelopes from Cook Envelope and Lithographing, Inc., an Illinois corporation, well knowing that Isaacs was an officer and employee of the State of Illinois and one of the owners of said corporation. This count fails to allege that, at the time of the contract, the corporation had, as one of its owners, a State officer or employee entitled to more than $7\frac{1}{2}\%$ of its distributable income. Under the allegations of the count, Cook Envelope and Lithographing, Inc. is not necessarily a corporation precluded from entering into a contract with the State, and the count accordingly is insufficient to charge an offense as to defendant Lang.

We accordingly hold counts XXVI, XXVII, XXVIII, XXIX, XXXI, XXXII, XXXIII and XXXIV are good and sufficient as to defendant Lang, and the order of the Sangamon County circuit court quashing and dismissing those counts is reversed as to defendant Lang; as to all other counts the order is affirmed as to defendant Lang; the order of the Sangamon County circuit court quashing and dismissing all counts as to defendant Isaacs is affirmed; the cause is remanded for further proceedings as to defendant Lang.

*Affirmed in part and
reversed in part
and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.