THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* BEN LIE-
BLING, Defendant-Appellee.

First District (1st Division)    No. 61755

Opinion filed March 15, 1976.

William J. Scott, Attorney General, of Chicago (James B. Zagel, Michael J. Mur-
phy, and Charles H. Levad, Assistant Attorneys General, of counsel), for the Peo-
ple.

Santo J. Volpe and Edward Spitz, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

On January 20, 1975, the circuit court granted the motion of Ben Liebling (defendant) to dismiss certain indictments against him because of the statute of limitations. The State has appealed, Supreme Court Rule 604(a)(1); Ill. Rev. Stat. 1973, ch. 110A, Rule 604(a)(1).

There are five separate indictments here involved. The People have appealed from the orders of dismissal concerning only these counts:

| Indictment | Counts |
|---|---|
| 73—1626 | 5, 6 |
| 73—2269 | 1 |
| 73—2270 | 1, 13, 14, 15, 16, 17 |
| 73—2271 | 10, 11, 12, 13 |
| 73—2272 | 13, 14, 15, 16, 17 |

These counts of the various indictments all involve two crimes: bribery (Ill. Rev. Stat. 1967, ch. 38, par. 33—1(d)) and conspiracy to commit bribery (Ill. Rev. Stat. 1967, ch. 38, par. 8—2). All counts cite the revised statutes of 1967 which declare the law as it existed when the alleged offenses were committed. Under these statutes, both of these offenses were misdemeanors and not felonies. (Ill Rev. Stat. 1967, ch. 38, pars. 2—7 and 2—11.) See *People v. Bain*, 359 Ill. 455, 470, 471, 195 N.E. 42, and *People v. Prather*, 16 Ill. App. 3d 376, 306 N.E.2d 361.

The statute of limitations, as it existed when the alleged offenses were committed, provided that prosecutions "must be commenced within 3 years after the commission of the offense if it is a felony, or within one year and 6 months after its commission if it is a misdemeanor." The statute today remains unchanged. Compare Ill. Rev. Stat. 1967, ch. 38, par. 3—5, to the same paragraph in Ill. Rev. Stat. 1973.

It is agreed that the last overt act regarding commission of any of the offenses here occurred on December 31, 1971. The Unified Code of Corrections took effect on January 1, 1973. (Ill. Rev. Stat. 1973, ch. 38, par. 1008—6—1.) This was less than 18 months after the last overt act. The indictments were all returned on July 26, 1973, more than 18 months after the last overt act.

However, the Unified Code of Corrections, effective *prior* to expiration of the 18-month statute of limitations, and a series of accompanying amendments to the Criminal Code, all effective on January 1, 1973, reclassified bribery as a Class 4 felony (Ill. Rev. Stat. 1973, ch. 38, par. 33—1). The law concerning conspiracy as thus amended provides, aside from exceptions not pertinent here, that defendants "shall not be sentenced in excess of a Class 4 felony." Ill. Rev. Stat. 1973, ch. 38, par. 8—2.

It is the People's theory, as expressed in its brief, that the legislature had the prerogative of extending a criminal statute of limitations which had not already barred the prosecution at the time of the extension and that the legislature exercised this legal power to enlarge the statute of limitations by passage of the Illinois Unified Code of Corrections. The defendant responds that the order appealed from was in compliance with the express terms of the applicable statute of limitations; the offenses here involved are misdemeanors under applicable law and it was not the intention of the legislature to extend the general period of limitations by enactment of the Unified Code of Corrections or to apply retroactively the changes of law made in the Unified Code.

■■ It is agreed by the parties that the legislature had power to extend a limitation period provided that the extension was accomplished prior to the expiration of the original period. This principle has been repeatedly expressed by the Illinois courts. (*People v. Anderson*, 53 Ill.2d 437, 440, 292 N.E.2d 364, citing *Orlicki v. McCarthy*, 4 Ill.2d 342, 122 N.E.2d 513, and *People v. Isaacs*, 37 Ill.2d 205, 229, 226 N.E.2d 38.) In *Anderson*, the Supreme Court used the following language (53 Ill.2d 437, 440):

> "There appears also to be widespread agreement that a legislative body can extend the period of limitations as to criminal offenses which occurred prior to the effective date of the change without violating the constitutional prohibition against *ex post facto* laws, so long as the extended period does not apply to any case in which the accused has acquired, as of the effective date of the change, a right to acquittal through the running of the original statute."

Although conceding this general principle, defendant urges strongly that permitting reclassification of the offenses from misdemeanors to felonies in effect amounts to a retroactive change of the law which is contrary to his rights. In this case we are assisted by a detailed order of dismissal prepared and filed by the trial judge in which he set forth in scholarly detail the facts here involved and his legal reasons for dismissing the indictments. We cannot agree with the result reached by the learned trial court.

The trial court stated in its order that there were no cases in Illinois covering the precise point here involved. Our research has disclosed no such authority. The trial court cited certain theories by way of analogy which will hereinafter be considered. However, it seems to us that the correct result is indicated by a number of factors. The legislature did not accomplish the extension of the statute of limitations by an amendment to the limitations statute. Instead it extended the limitation period by reclassification of the pertinent offenses from misdemeanors to "Class 4" felonies; a designation previously unknown in the law of Illinois. Since we have agreed that the legislature had complete authority expressly to extend the

limitation period as of January 1, 1973, the question to be solved here is the validity of extension of the period accomplished by changing the classification of the crimes.

■■ In considering the merits of this change, we must first be guided by the principle that the legislature must be deemed to have been aware of the existence and form of the limitation statute and therefore of the fact that changes in the classification of various offenses would necessarily cause changes in the limitation period. (*Theodosis v. Keeshin Motor Express Co.*, 341 Ill. App. 8, 21, 22, 92 N.E.2d 794.) The statute of limitations in its present form has been a part of the Criminal Code of Illinois since 1961. The legislature therefore must have been aware of the law of Illinois which does not attempt to specify various limitation periods for each different crime but which, with commendable simplicity, states two periods of limitations; one for felonies and another for misdemeanors.

The trial court in his memorandum pointed out that statutes of limitation are to be liberally construed toward accomplishment of the policy of repose in criminal law. However, as shown, we are not dealing here with an issue involving construction of a limitation act so that the principle of liberal construction to favor repose is not applicable.

The issue also appears regarding possible *ex post facto* application of the law in the event that the result is reached that the extension of the limitation period by virtue of the reclassification was proper. In this regard, the trial court cited *Stein v. Howlett*, 52 Ill.2d 570, 289 N.E.2d 409. The Supreme Court there held that the Illinois Ethics Act was not an *ex post facto* law because its requirement for filing financial statements was not to apply retroactively. The court defined the general rule of *ex post facto* legislation in part as aggravating a crime or making it greater than it was when committed or increasing the punishment for a crime and applying this increase to crimes committed before enactment of the law. 52 Ill.2d 570, 584.

■■ The Unified Code specifically provides that where "the offense being prosecuted has not reached the sentencing stage or a final adjudication, then for purposes of sentencing the sentences under this Act apply if they are less than under the prior law upon which the prosecution was commenced." (Ill. Rev. Stat. 1973, ch. 38, par. 1008—2—4.) It follows that in the event defendant is tried and convicted upon any of the counts in question here, he will have the option of being sentenced in accordance with the law as it exists at that time or as it existed when the offense was committed. Our Supreme Court has interpreted the Code as providing that its sentence provisions "apply only if they call for a lesser sentence than that provided for under the prior law upon which the prosecution was commenced." (*People v. Lilly*, 56 Ill.2d 493, 497, 309 N.E.2d 1.) This

comports with the intent of legislation more than 100 years old regarding statutory construction. (See Ill. Rev. Stat. 1973, ch. 131, par. 4.) Section 4 of the act on construction of statutes provides that where any penalty is mitigated by a new law this provision may be applied, with consent of the affected party, to judgment entered thereafter. However, the section also provides that proceedings after enactment of the new law shall conform so far as practicable, to the law then in force. This includes statutes of limitation which have been held to be procedural in nature. (See *People v. Anderson*, 53 Ill.2d 437, 440, 292 N.E.2d 364.) We therefore conclude that there can be no *ex post facto* application of the new law to the detriment of defendant as regards possible sentence and the procedure prescribed in the new law regarding the period of limitations is to be observed.

■■ In other words, the legislature has reclassified the crimes of conspiracy and bribery as Class 4 felonies. The result was to extend the limitation period from 18 months to 3 years. Since this was accomplished prior to expiration of the 18-month period, it was a lawful exercise of legislative power; and, as above shown, not in violation of the protective doctrine of *ex post facto*.

Counsel for defendant directs our attention to two authorities also cited by the trial court. In *State v. Bevins*, (1923), 94 W. Va. 344, 118 S.E. 342, defendant, previously convicted of possession of illicit liquor, was charged with and convicted of a second such offense. Under the law of West Virginia, this second conviction was classified as a felony because punishable by confinement in the penitentiary. The court held that the misdemeanor statute of limitations was applicable to the second offense.

Although *Bevins* involves application of a statute of limitations, it is quite different from the case before us. It deals with a misdemeanor offense classified as a felony by virtue of repetition. The Supreme Court of Appeals of West Virginia based its decision in *Bevins* upon two cases decided under local law. In *Stover v. Commonwealth*, (1895), 92 Va. 780, 22 S.E. 874, decided by the Supreme Court of Appeals of Virginia in 1895, the court held that mandatory life imprisonment would not be imposed upon a recidivist who had originally been found guilty of petty larceny and confined in jail and who was then convicted several times for the same offense and sentenced to the penitentiary. The court arrived at this result by a construction of three sections of the Virginia Code. Thereafter, in *State v. Brown*, (1922), 91 W. Va. 187, 112 S.E. 408, the Supreme Court of Appeals of West Virginia followed *Stover* and refused to treat as a habitual criminal a defendant who had previously been sentenced to the penitentiary for offenses made felonies on the ground of repetition of misdemeanors.

In *McIlwain v. State* (1956), 226 Ark. 818, 294 S.W.2d 350, defendant

was charged with and found guilty of unlawful possession of marijuana. A prior statute which expressly made this conduct a felony had been repealed prior to trial. The court applied the statute of limitations applicable to misdemeanors and held that the limitation statute under the law of Arkansas went to the court's power to try the case and could be raised for the first time even in a motion for new trial. The court then pointed out that the habitual criminal statute which might increase the maximum penalty for a second conviction does not purport to raise the grade of the second offense. *McIlwain* is concerned with the statute of limitations but it involved application of the statute to a misdemeanor offense raised to a felony because of a previous conviction for that same offense. No change in the classification of the original offense is there involved.

In short, *Bevins* and the two authorities upon which it depends deal with misdemeanors converted into felonies because of repetition. The case before us deals with reclassification of the original offense itself from a misdemeanor to a felony. For these reasons we cannot agree that *Bevins* and *McIlwain* are applicable here.

We conclude that the orders dismissing each of the counts in question as above itemized were improvidently entered and the judgments appealed from are accordingly reversed and the causes remanded for further proceedings.

Judgments reversed; causes remanded.

BURKE and SIMON, JJ., concur.