(No. 38784.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PERCY NELSON, Plaintiff in Error.

*Opinion filed May 20, 1965.—Rehearing denied September 27, 1965.*

SAM ADAM and ANTHONY F. MANNINA, both of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and RONALD BUTLER, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Percy Nelson, was indicted and tried for murder in the criminal court of Cook County. Upon a find-

ing of guilty he was sentenced to a term of 50 to 80 years in the penitentiary. On this writ of error he contends (1) that the trial court erred in quashing his subpoena requesting the results of polygraph examinations of all persons tested with regard to the case; (2) that there was a fatal variance between the indictment and the proof; (3) that the evidence did not establish his guilt beyond a reasonable doubt; (4) that the court erred in allowing the testimony of a witness who had been in the courtroom during the testimony of another witness in violation of the court's order excluding witnesses; and (5) that the sentence was unreasonably and unconscionably severe.

On the night of October 16, 1963, Henry O'Connor was shot and killed in his automobile in Chicago. The defendant was subsequently arrested and charged with the crime, as was one Harold Newell.

The evidence against the defendant consists primarily of the testimony of Harold Newell. Newell testified that he had been at the deceased's home during the afternoon of October 16, 1963, watching television. Later that evening he and deceased left in the deceased's car and drove to Newell's house where they saw defendant waiting nearby. Newell further testified that defendant forced him out of the car and drove away in the car with the deceased.

After a recess Newell was recalled to the witness stand where he contradicted his earlier testimony by stating that he had killed Harold O'Connor at the direction of the defendant. He testified that defendant had offered to pay him $500 if he would kill O'Connor; that the day before the murder defendant gave him $180 and promised to give him more later; and that on the following day defendant went to his home and gave him an additional $80. He further testified that he met the deceased and drove him to a lakefront area where he shot O'Connor several times, threw the revolver in the lake and returned home in a taxi.

A police officer testified that O'Connor had acted as an

informer against defendant in a narcotics case and was scheduled to testify against defendant several days subsequent to the day of the murder.

Newell's wife, who had been present in the courtroom during the testimony of her husband in contravention of the trial court's order excluding witnesses, corroborated her husband's testimony that defendant had come to their house and left money on the evening of October 14.

Testifying in his own behalf, defendant denied killing Henry O'Connor and also denied that he ever gave any money to Harold Newell for the murder of O'Connor.

Defendant's initial contention is that he was deprived of due process of law by virtue of the denial of his request for the production of the results of polygraph examinations given by the police to all persons in connection with the death of Henry O'Connor. In support of this contention he relies upon the case of *Brady* v. *Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, wherein the court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, * * *." (373 U.S. at 87.) A polygraph operator's opinion as to the truthfulness of a lie detector subject has never been recognized by this court as admissible evidence on the issue of a defendant's guilt or innocence, (*People* v. *Zazzetta,* 27 Ill.2d 302), and therefore the dictates of the *Brady* case do not require the production of such results. It is undisputed that defendant was afforded access to all prior statements made by witnesses, including those statements made during the polygraph tests. It further appears from the record that defendant was aware of the results of the lie detector test given to the State's chief witness, Newell. In our opinion the trial court did not err in denying defendant's request for the production of the lie detector results.

Defendant further contends that there was a fatal variance between the indictment and the proof in that he was

charged as a principal with the crime of murder, whereas the proof at most indicated he was only an accessory before the fact. This contention cannot be sustained. A person is legally accountable for a crime when he, with intent to facilitate the commission of a crime, effects the commission of the crime by another person. (*People* v. *Ruscitti,* 27 Ill.2d 545). "It is not necessary that the indictment against the accessory describe the circumstances as they actually occurred, but it is sufficient if the accessory is charged with the legal effect of the acts performed by him." (27 Ill.2d at 546-7.) Defendant's actions in this case, if proved, constitute him guilty of the crime as charged. *People* v. *Bates,* 16 Ill.2d 290.

Defendant also contends that as a result of the alleged variance he was unable to properly prepare his defense. Even if it be assumed that there was a variance in this case, it cannot serve to vitiate the conviction unless it was of such a character as to mislead the accused in his defense or expose him to double jeopardy. (*People* v. *Figgers,* 23 Ill.2d 516.) In this case when Newell contradicted his earlier testimony and admitted that he shot the victim, the court asked defendant's counsel if such disclosure affected his preparation of the defense. Counsel responded negatively. At no other time during the trial or in the motion for a new trial did counsel request additional time or assert that it was impossible for him to prepare an adequate defense.

Another reason assigned by defendant as to why his conviction should be set aside is that he was not proved guilty beyond a reasonable doubt. He argues that the inconsistent testimony of Harold Newell is entirely unworthy of belief. He also suggests that Newell's testimony was unbelievable due to certain evidence in the record that Newell was a narcotics addict. The fact that a witness has changed his testimony and the fact that he may be a narcotics user do not conclusively destroy his testimony but are only factors to be considered by the trier of fact in passing upon the

credibility of such a witness. (*People* v. *Smith,* 25 Ill.2d 428.) Upon a consideration of all the evidence in this case, we think that the trial judge was justified in believing Newell's subsequent testimony and in finding defendant guilty of the crime of murder.

Defendant also suggests that the trial court erred in allowing Newell's wife to testify after she had been in the courtroom during the trial in violation of the court's order excluding witnesses. We note, however, that she was in the courtroom during only a part of her husband's testimony on the last day of the trial. Furthermore, the decision whether to allow a witness to testify under such circumstances is within the discretion of the trial court, and unless there has been a clear abuse of such discretion, the court's decision will not be disturbed. (*People* v. *Godsey,* 334 Ill. 11; *Bow* v. *People,* 160 Ill. 438.) We think that in this case the trial judge did not abuse his discretion and that he was in a position to weigh Mrs. Newell's testimony in view of the fact of her presence in the courtroom during a part of the trial.

Defendant's final contention is that his sentence was excessive, considering the fact that he did not deliver the fatal shot by his own hand. This argument is without merit. The fact that defendant did not himself shoot the deceased in no way lessens his accountability for the crime which he caused another to commit.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*