(No. 41441.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. WILLIAM R. ALLEN, Appellant.

*Opinion filed January 28, 1972.*

FRENCH & DAVITT, of Rockford, (ROBERT J.
FRENCH, of counsel,) appointed by the court, for
appellant.

WILLIAM J. SCOTT, Attorney General, of Spring-
field, and PHILIP G. REINHARD, State's Attorney, of
Rockford, (THOMAS J. IMMEL and FRED G. LEACH,
Assistant Attorneys General, and DANIEL D. DOYLE,
Assistant State's Attorney, of counsel,) for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion
of the court:

Defendant, William R. Allen, was convicted of murder
following a jury trial in the circuit court of Winnebago
County and was sentenced to the penitentiary for a term

of 15 to 40 years. He appeals seeking reversal of the conviction, alleging that the trial court erred in denying him the right to interpose a plea of self-defense, *viz.*, disallowing testimony of witnesses regarding the character and prior conduct of the victim that would "lend credence to the fact" that defendant acted in self-defense, refusing to give self-defense instructions and denying him the right to argue the same to the jury. He claims further error when the court denied him a copy of the transcript of the grand jury proceedings prior to trial.

At 7:36 P.M., on September 8, 1967, police officers arrived at defendant's home in response to a shooting call. They found the victim lying dead on the front steps. His body was face down with the feet at the top of the concrete stoop on the same level as the front door, and his head was resting on the adjacent sidewalk at the foot of three concrete steps.

The cause of death was a single .22 caliber bullet wound which entered at the back of the head and proceeded upward through the brain at an angle of approximately 45 degrees. The examining pathologist estimated, from the nature of the powder burn, that the muzzle of the gun was probably within an inch of the back of the victim's head at the time of discharge. The victim's body was found to have a .26% blood alcohol content indicating a level of intoxication. The only other recent injury to the body was an abrasion on the left forehead which could have resulted from the victim's fall to the sidewalk after he was shot.

Officers found a .22 caliber, single-action revolver inside a holster, lying one foot inside the front door of defendant's house. Under the hammer, was found an expended .22 caliber shell. There were also four live rounds and one vacant chamber in the six chamber cylinder. The revolver could be fired only by cocking (by pulling the hammer to rearward position) prior to each pull of the trigger. This weapon was identified by expert

testimony as having fired the fatal bullet, fragments of which were removed from the victim's head. Laboratory testing showed the presence of primer residue on defendant's hands and the absence of primer residue on the hands of the victim.

After finding the body, an officer turned to the defendant, who was waiting nearby, and asked him who had fired a weapon. Defendant's wife pointed to the defendant who then stated that he did. Defendant was arrested and taken to the police station. Officers, who were with defendant for approximately one or two hours following his arrest, stated that in their opinion he was not intoxicated and showed no sign of physical injury.

Defendant's father-in-law testified that he drove up to the defendant's house at about 7:15 P.M., prior to the killing, and observed the defendant and the victim arguing in the front yard. He heard the defendant say to the victim "you come here to kill me." The father-in-law carried some groceries into the defendant's house and, upon his return, saw the defendant standing over the victim who was lying on the ground. The defendant was holding the revolver, which was still in its holster, and the argument continued.

A twelve-year-old neighbor boy testified that he was playing near defendant's house and saw defendant standing over a man who was lying on the ground. Defendant, at this time, was holding a gun which was not in a holster and was telling the other man to get up. The witness then ran to the opposite side of the house and heard an explosion. When he returned to the front of defendant's house a few seconds later he saw the victim lying on the steps.

The shooting was witnessed by a neighbor woman and her twelve-year-old daughter as they drove slowly past the front of defendant's house in their automobile. The victim was seen with his hands up against a window screen on the front of the house near the steps. Another man was

standing beside him and was pointing the pistol at him. The former turned to his left and stepped up onto the concrete stoop. The latter shoved him and stepped up from behind, raised the pistol, placing it directly against the back of victim's head, and fired a shot. The victim fell down the three steps on the opposite side of the stoop away from the assailant. Neither witness saw any struggle between the two men immediately preceding the shooting.

Defendant testified that the victim had been his friend. On the morning of September 8, the day of the homicide, they drank together in a Belvidere, Illinois, tavern. On that afternoon they left the factory where defendant worked and from which the victim had just been discharged. The defendant rode in an automobile with other companions while the victim followed in his car. The defendant later entered the victim's car and they drove to the defendant's house where they began drinking at about 5:00 P.M.

Sometime after 6:00 P.M. the victim brought the pistol and holster into the house. He removed five bullets from the pistol and began demonstrating fast drawing. The defendant testified that they again sat down and began to talk and the victim accused the defendant of taking fifty dollars from him. The victim then began pointing the pistol toward the defendant and the defendant's brother, saying, "Somebody is going to die before I leave here." The defendant, however, succeeded in calming the victim and they decided to go to a nearby store to purchase liquor. The victim placed the pistol in his car before they departed.

Upon returning to defendant's house they resumed drinking. Defendant did not recall any argument after their return but testified that he remembered only that he and the victim had a "scuffle" in the yard, which he described as follows: "There was no fist fighting in particular or kicking or anything of that nature, just pushing and holding on to each other and some of that nature." The

defendant received no injuries or tears in his clothing and did not recall getting any dirt on his body or clothing. He testified that he did not know how he finally gained possession of the victim's weapon but recalled having the gun after he fired the shot on the porch. The last incident he remembered in detail was going to the liquor store but he did recall seeing the victim lying on the steps, his attempt to call the police, the arrival of the officers, the ride in the squad car, and his conversation with the officers at the police station.

Defense counsel tendered an instruction on self-defense which the court refused. The trial judge ruled that no issue of self-defense was raised by the evidence. Certain evidence offered by the defense to show the violent character of the victim when intoxicated was similarly excluded on this basis, and defendant's pretrial motion for production of the grand jury minutes was denied.

Before defendant may introduce evidence concerning the violent character of the victim, some foundation must be first laid by introduction of evidence of self-defense. *(People v. Adams, 25 Ill.2d 568, 572.)* It is clear from the record that there was no evidence of self-defense introduced. Defendant testified that earlier in the evening the victim wrongfully accused him of stealing his money and made threatening remarks and gestures toward him and his brother. This argument apparently ended, however, when defendant succeeded in calming the victim and the men left for the liquor store together. Defendant did not recall any argument after their return to his house and they resumed drinking. He recalled a "scuffle" with the deceased—"just pushing and holding on to each other". It did not involve fist fighting or kicking. Defendant admitted receiving no injuries or tears to his clothing and did not recall getting dirt on himself. He made no claim that this "scuffle" had any connection with the firing of the revolver at the back of the victim's head. Nor did he assert that the victim was moving toward him or presenting any

danger to his safety at the time the shot was fired. "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force." (Ill.Rev. Stat. 1969, ch. 38, par. 7—1.) Even defendant's trial counsel told the jury that "[t]his man [the defendant] cannot recall or recollect each and every specific incident that occurred in and about thirty minutes of his life from approximately 7:00 p.m. that evening until 7:33 p.m., the time that the first officers told you they arrived at the scene." Neither the evidence presented by the State nor by the defendant established any issue of self-defense. Under these circumstances the trial court properly excluded the testimony pertaining to deceased's alleged violent character and prior acts, and properly denied self-defense instructions which restricted defense argument on the subject.

Additionally, defendant complains that the prosecutor did what defendant's attorney was precluded from doing, *i.e.,* "he argued regarding self-defense to the jury in closing". The prosecutor, after summarizing the evidence, stated that defendant could not claim self-defense nor accident. He then said: "So, there is no defense available to them. So what do they have left. Well, they will say he was drinking. He doesn't remember. He says he was intoxicated and he had blacked out. He doesn't remember how this happened." There was no objection to this argument. Furthermore, defense counsel, in his closing argument, made reply to these remarks. In fact, the tenor of defense counsel's argument implied an attempt to establish self-defense. We find no prejudicial error committed under these circumstances.

Defendant finally contends that the trial judge erred in denying defendant's pretrial motion for examination of the grand jury transcript. We do not agree. The law applicable at the time of defendant's trial allowed the

defense to examine grand jury testimony for purposes of impeachment after the witness had testified at trial. *(People v. Johnson, 31 Ill.2d 602; People v. French, 61 Ill.App.2d 439.)* Therefore, the trial judge properly denied the motion which defense counsel failed to renew during trial.

For the aforementioned reasons the judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*