THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STANFORD HADLEY, Defendant-Appellant.

(No. 12056;

Fourth District—July 10, 1974.

John F. McNichols and John L. Swartz, both of the State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, for the People.

Mr. JUSTICE KUNCE delivered the opinion of the court:

Defendant was found guilty by a jury of aggravated battery and not guilty of attempted robbery and appeals his conviction and sentence of 2 to 5 years. The issues presented are: (1) whether there is a fatal variance between the charge against the defendant as stated in the indictment and the two jury instructions defining the offense for which he was convicted; (2) whether the trial court erred in excluding evidence of the victim's "loan sharking" activities on the basis of materiality and hearsay; and (3) whether defendant's conviction for aggravated battery should be reduced in accordance with the new Unified Code of Corrections.

The victim, R. T. Spates, testified that the defendant approached him at a card game to purchase a T.V. located in defendant's car and that once outside the house defendant pulled a knife and cut him in the stomach and chest. He obtained a stick, then chased and caught defendant, forcing him to throw the knife away, and called for the police. He stated he did not know the defendant and had never made a loan to anyone, including the defendant.

The defendant testified that he owed Spates money and when he saw him in the card game on May 14, 1972, he had left to avoid trouble but that Spates had followed him, attacked him with a knife and that Spates was cut in the struggle. He stated at trial that Spates was a loan shark and had loaned him money at a high rate of interest. He told a police officer on the date of the offense that he had never seen Spates before and said nothing about Spates trying to collect money from him, relating only that Spates drew a knife on him while walking down the street. R. V. Batchelor, a fellow employee of Spates and an inmate of the Macon County jail testified that although he had not taken part nor observed any loan transactions of Spates, he had seen Spates take money on the street in front of a tavern. The court sustained objection to the line of testimony as immaterial. The defense counsel stated that if further inquiry could be made, it could be discerned whether the witness overheard any conversation by Spates. The court ruled that such evidence would be hearsay and then struck all of Batchelor's testimony after he had stated that he had never had any financial dealing with Spates and the court commented that the witness could have no knowledge of what the transaction he observed could have been.

As to the first issue of variance, section 12—4 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 12—4) states:

"(a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery and shall be imprisoned

in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 10 years.

(b) A person who, in committing a battery either:

    (1) Uses a deadly weapon;

    \*    \*    \*

    (9)   \*   \*   \*   [C]ommits aggravated battery and shall be imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 5 years."

Defendant was indicted under section 12—4(b)(1) "in that he knowingly and without legal justification, caused bodily harm to R. T. Spates, while used a deadly weapon, to wit: a knife, in that he cut R. T. Spates in the abdominal area with a knife." However, the jury instructions given without objection by defense counsel defining the offense for which he was subsequently convicted defined an offense under section 12—4(a) in that "A person commits the crime of Aggravated Battery who, in committing a battery, intentionally or knowingly causes great bodily harm to the person harmed." Defendant, therefore, argues that the conviction should be reversed because defendant was not convicted of the crime for which he was charged, *i.e.*, there was a fatal variance between the crime charged and the instruction given.

■■ It should first be pointed out that defendant never objected to Instruction Nos. 7 and 8 tendered by the State and subsequently given, nor do they allege the variance as an error in their post-trial motion. They would generally be deemed to have waived the objection and would not be able to raise it for the first time on review. However, if there is, in fact, a *fatal* variance and defendant was convicted of a different offense than which he was charged, it would obviously constitute plain error for which this court may take notice for it clearly deprives defendant of substantial rights and is violative of the rule of fundamental fairness. Nevertheless, in the instant situation there is clearly no fatal variance.

The opinion of the court in *People v. Rosochacki*, 41 Ill.2d 483, 244 N.E.2d 136, is dispositive of the issue here. In *Rosochacki* the indictment alleged that defendant violated 9—1(a)(1) of the Criminal Code in that he "committed the offense of murder, in that [he] intentionally and knowingly stabbed and killed [the victim] with a knife without lawful justification   \*   \*   \*." The instructions given to the jury defined the murder in terms of section 9—1(a)(2) and 9—1(a)(3)—strong probability of death or great bodily harm and attempting or committing a forcible felony. Defendant contended that an accused may not be charged with one offense and convicted of a different offense. The court disposed of this argument by concluding:

1076

"\* \* \* We think, however, that *the instructions correctly informed the jury of the legal principles applicable to the facts in the case,* and that there was no fatal variance between the crime charged and the instructions given. \* \* \*

\* \* \* We find that the *defendant here was charged with murder and convicted of that crime,* and even if a variance did exist between the type of murder charged in the indictment and the types described in the instructions, *it would not vitiate the conviction unless it was of such a character as to mislead the defendant in his defense or expose him to double jeopardy.* (*People v. Nelson,* 33 Ill.2d 48, 52; *People v. Figgers,* 23 Ill.2d 516, 518-9.) There is no evidence in this case whatsoever that the defendant was misled in his defense, nor did counsel at any time during the proceedings request additional time, allege surprise, or claim that it was impossible for him to prepare a defense to the proof being offered against him. See *People v. Nelson,* 33 Ill.2d at 52." (41 Ill.2d at 491, 492.) (Emphasis supplied.)

As in *Rosochacki,* defendant in the instant case was not misled in his defense nor did defendant at any time during the proceedings request additional time or allege surprise or claim that it was impossible for him to prepare a defense to the proof being offered against him.

The only possible distinction between *Rosochacki* and the present case is that in *Rosochacki* the penalty for violating sections 9—1(a)(1), (2) and (3) is the same while in the present case the penalty for violating section 12—4(a) (1 to 10) and section 12—4(b) (1 to 5) differ. Although defendant was indicted under section 12—4(b)(1), the jury under the applicable instructions found defendant guilty of section 12—4(a). The judge, however, in sentencing defendant used the lower penalty provisions of section 12—4(b)(1). Defendant, therefore, cannot claim any prejudice in that regard.

■■ Defendant then is clearly guilty of aggravated battery under section 12—4(a) if the evidence supports such a violation. Here there was a clear question of credibility for the trier of fact, and the jury obviously believed R. T. Spates and not the defendant—not an implausible finding considering the various conflicting stories proffered by the defendant. The question then becomes one of whether the evidence shows the "great bodily harm" required by section 12—4(a). R. T. Spates contended that defendant pulled a knife and cut him in the stomach and chest. When the police arrived victim was taken to the hospital and had to have stitches. The arresting officer, Robert J. Davis, stated that when he arrived Spates was bleeding from the chest and head and from a puncture wound in his stomach. Spates stated, however, that he didn't think

he was in any danger of dying. Nevertheless, what constitutes great bodily harm to support an aggravated battery charge is a question of fact to be determined by the jury, and their decision in the present case is clearly not against the manifest weight of the evidence. *People v. Polansky*, 6 Ill.App.3d 773, 287 N.E.2d 747; *People v. Newton*, 7 Ill.App.3d 445, 287 N.E.2d 485; *People v. Smith*, 6 Ill.App.3d 259, 285 N.E.2d 460; *People v. Barbour*, 5 Ill.App.3d 323, 282 N.E.2d 175.

■■ Defendant also contends that it was error in not submitting a battery instruction along with the instruction on aggravated battery as recommended by IPI-Criminal, § 11.07. However, battery under section 12—3 is committed when one "intentionally or knowingly  *  *  * causes bodily harm to an individual  *  *  *." Aggravated battery under section 12—4(a) is committed when one "intentionally or knowingly causes great bodily harm  *  *  *." Therefore, the elements of battery have been substantially covered by the aggravated battery instruction (the only difference being in degree), and any instruction in that regard would be clearly cumulative.

■■ The defendant next contends that it was error to exclude the testimony of a defense witness, Batchelor, that the victim was a loan shark. Defendant had previously testified that Spates was the initial aggressor and at the time of the assault was attempting to collect a loan which was given at a usurious rate. The defense then called Batchelor, who stated that he had seen Spates taking money on the street and had never had any transactions with Spates. He then began to testify to payments he had seen being made to Spates. The State then objected on the grounds of materiality. The court then sustained the objection stating that the mere transfer of money is no indication of any irregularity. This testimony was clearly immaterial because it does not help to prove or disprove any material fact or issues in the case. Obviously, there are two material factual questions here: (1) whether defendant knowingly caused great bodily harm to victim; and (2) whether defendant was acting out of self-defense because Spates was the initial aggressor. This testimony certainly does not help to prove or disprove either of these issues, and the testimony appears to be an effort by the defendant to prove Spates the aggressor by the introduction of collateral matters when direct evidence in that regard was lacking for defendant's stories were highly contradictory. Furthermore, the introduction of such evidence would have tended to confuse the jury allowing it to base its decision on inferences that could have been drawn from his testimony.

■■ Defendant also argues that this testimony is material in that it shows Spates' bias and has a bearing upon the question of whether Spates was the aggressor. Whether or not victim is a loan shark is irrelevant in

relation to the issue of whether Spates was the initial aggressor. Certainly in a battery prosecution the victim's character or reputation for peace and quiet would be admissible on the question of self-defense, but victim's alleged "loan sharking" activities is not evidence of such reputation.

■■ The defense also contended that if further inquiry were made it could be discerned whether Batchelor ever overheard any conversations between Spates and other individuals. The trial court sustained the State's objection to this offer of proof as hearsay. The trial court's ruling in that regard was proper because these were to be statements made outside the personal knowledge of the witness, would be based on what the witness overheard, and would be used to prove the truth of the matters asserted therein.

■■ Defendant also contends that evidence of a witness' unsavory or illegal profession or line of business is admissible because it goes to defendants' credibility or to impeachment of defendant's statements. Spates testified that not only did he not make a loan to defendant, but that he had never made loans to anyone. The credibility of a defense witness may be attacked on cross-examination by showing that witness to be engaged in any unlawful or disreputable occupation. (*People v. Crump,* 5 Ill.2d 251, 125 N.E.2d 615; *People v. Bond,* 281 Ill. 490, 118 N.E. 14; *People v. White,* 251 Ill. 67, 95 N.E. 1036.) Nevertheless, the proper way to attack credibility in the present case after Spates' denial of any loan activities on cross-examination was by introduction of evidence of other individuals who had engaged the loan transactions *directly* with Spates. This evidence would then be specifically admissible for the purpose of credibility only. This was not done here because the individual chosen in this regard did not have any transactions with Spates and any offer of proof as to conversations he overheard is hearsay.

■■ On defendant's last contention that sentence be reduced in accordance with the Unified Code of Corrections to which the People make no objection, during oral argument on appeal counsel for the defense stated that defendant was presently on parole and that this issue would be waived. It is, therefore, unnecessary that we consider this issue.

For the reasons stated above, the judgment of the circuit court of Macon County and the sentence imposed therein is affirmed.

Affirmed.

SMITH, P. J., and CRAVEN, J., concur.