THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNEST LEE BRATCHER, JR., Defendant-Appellant.

(No. 12608; )

Fourth District—June 12, 1975.

GREEN, J., concurring in part and dissenting in part.

Richard J. Wilson and Thomas Nelson, both of State Appellate Defender's Office, of Springfield, for appellant.

Basil G. Greanias, State's Attorney, of Decatur (Jon C. Baxter, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Defendant, Ernest Lee Bratcher, appeals from a judgment entered following a jury trial for the offense of aggravated battery in violation of section 12—4(b)(6) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(b)(6)) and from a sentence imposed of 2 to 10 years' im-

prisonment. Defendant was charged with two counts of aggravated battery. He was convicted of striking Officer Robert Moore, acquitted of the charge involving Officer Resch. Defendant raises the following issues for resolution by this court: (1) Whether the trial court erred in refusing defendant's self-defense instruction, and (2) Whether the trial court erred by imposing the wrong sentence for the offense charged.

The following recitation of testimony related to the evidence as presented on the self-defense issue.

Robert Moore, a Decatur police officer, testified as follows. On July 4, 1973, he and Officer Resch observed a car out of control. The car was stopped. Thelma Moss was driving. The officer suspected that she was under the influence and requested Ms. Moss to perform several tests. The officer, however, decided to issue but one citation for improper lane usage and returned to the squad car to write up the citation. Defendant approached the scene and talked to Ms. Moss. Defendant then approached the squad car and initiated a conversation concerning the citation. Defendant began swearing, insisting that the officers would have to beat him up if they issued a citation. Officer Moore noticed the smell of alcohol on defendant's breath. Both officers stepped out of the car. Defendant retreated but also raised his hands to a squaring-off position. Moore drew his nightstick but did not raise it. The officer then advised defendant three different times to leave the area. Each time defendant refused, repeating his original statements. The officer informed him he was under arrest for obstructing a police officer. Defendant was requested to go into a frisk position against the squad car. Defendant did so, at least to the point of putting his hands on the car. Moore started to return his nightstick to his belt. He looked up, saw defendant's fist coming, dodged but was hit above the ear and knocked back. At that point Officer Resch hit defendant over the head with his nightstick, and defendant started swinging wildly. A fracas and chase ensued, defendant eventually being subdued. Officer Resch substantially corroborates Moore's testimony.

Officer Donald Brooks testified that he interviewed defendant the morning after the incident. Mr. Bratcher admitted hitting one of the officers but told Brooks that he felt that they were going to whip him so that he took a swing first.

Defendant testified in his own behalf. He admitted being intoxicated and admitted that he was repeatedly asked to leave but refused to do so. Defendant's version was that both officers had their nightsticks raised up as they got out of the squad car. He stated that he was never told he was under arrest but was shoved against the car, told to leave, decided to do so and had taken a step away when he was shoved hard

from behind. At this point he turned around and hit Officer Moore. Defendant further stated that he was not in fear but that the second shove surprised him and made him mad so that, in automatic reaction he turned around and hit Moore as hard as he could. He said he then realized what he had done, decided to quit and dropped his hands. According to defendant Officer Moore then told defendant that he was going to be taught a lesson and the two officers started beating on him with their nightsticks.

Defendant first contends that the court improperly refused to give an instruction (IPI—24.06) tendered by defendant. The instruction is that on the use of force in defense of a person.

■■ It is proper to give the self-defense instruction only if the issue of self-defense is raised by the evidence. (*People v. Allen,* 50 Ill.2d 280, 278 N.E.2d 762.) The trial judge refused to give this instruction on the grounds that the evidence did not raise the issue.

IPI—24.06, defendant's instruction, reads:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force."

This is taken directly from the statute which defines the affirmative defense of self-defense. (Ill. Rev. Stat. 1973, ch. 38, § 7—1.) The Committee Comments to that section indicate that a person must actually believe that a danger exists and that force is necessary to avert the danger. Ill. Ann. Stat. ch. 38, § 7—1, Committee Comments (Smith-Hurd 1972).

■■ Defendant's own testimony negates the existence of a self-defense issue. Defendant testified that he struck out in anger and surprise. He said his action was an automatic response to the touch of the officer. Defendant specifically testified that he was not in fear at the time he hit the officer. A self-defense issue arises only if the person acted to protect himself from the imminent use of unlawful force by another. Defendant testified to his own mental state and that testimony shows that defendant did not act to aver the use of unlawful force by another. Therefore the court did not err in refusing the instruction.

Defendant also contends that he was improperly sentenced. Defendant was convicted of aggravated battery under section 12—4(b)(6) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, § 12—4) which states that a person who in committing a battery upon a peace officer engaged in his official duties commits an aggravated battery. Prior to the passage of the Unified Code of Corrections sections (a)(b) and (c) of the aggravated battery statute each contained their own penalty provisions.

The penalty for a violation of section 12—4(a) was 1 to 10 years' imprisonment (Ill. Rev. Stat. 1971, ch. 38, § 12—4(a)). The penalty for a violation of any of the subparagraphs of section 12—4(b) was contained in subsection (9) of that section and provided for imprisonment "in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 5 years." Section 12—4(c) also contained its own penalty provisions.

The Unified Code of Corrections, however, became effective on January 1, 1973, and added a new section (d) to the statute which provided that aggravated battery is a Class 3 felony. A Class 3 felony carries a 1- to 10-year term of imprisonment (Ill. Rev. Stat. 1973, ch. 38, § 1005—8—1(b)(4)). The individual penalties under section (a) and (c) were removed at that time. The penalty for section (b) contained in subsection (b)(9) was, however, not removed. Defendant therefore contends that it was improper for the trial court to have imposed a sentence which treats a section 12—4(b)(6) offense as a Class 3 felony. It is argued that the proper penalty was that contained in subsection 12—4 (b)(9). We agree.

■■ We are cognizant of the fact that it was the intent of the legislature in drafting the Unified Code of Corrections to abolish all indictable misdemeanors and to establish a uniform sentencing structure. Nevertheless, upon adoption of the Unified Code of Corrections, the legislature saw fit to retain the penalty section contained in 12—4(b)(9) for the types of aggravated battery defined in the 9 subparagraphs of section (b) of the statute. We further note that before the adoption of the Unified Code the penalty for a section 12—4(b) aggravated battery was lesser than that contained in the section 12—4(a) aggravated battery where a person in committing a battery "intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement." We believe this differentiation in penalties is reasonable (*People v. Hanson*, 53 Ill.2d 79, 289 N.E.2d 611), and is clearly applicable to the type of offense committed in the instant case.

As further support for this conclusion we note the language contained in section 5—5—2(d) of the Unified Code (Ill. Rev. Stat. 1973, ch. 38, § 1005—5—2(d)) which provides as follows:

"(d) Notwithstanding the classification provided for in this Section, the term of incarceration imposed shall not exceed the maximum authorized by the statute defining the offense."

It is also well established that penalty statutes must be strictly construed and that any ambiguity which might exist must be resolved in favor of the accused (*People v. Isaacs*, 37 Ill.2d 205, 226 N.E.2d 38). The

trial court then erred in sentencing defendant for a Class 3 felony instead of under the sentencing provision provided by section 12—4(b)(9).

Accordingly, for the reasons stated above the judgment of the circuit court of Macon County is affirmed, the sentence imposed is reversed, and the cause is hereby remanded for resentencing in accordance with the views expressed herein.

Judgment affirmed, sentence reversed and remanded.

CRAVEN, J., concurs.

Mr. JUSTICE GREEN, concurring in part and dissenting in part:

I concur in the affirmance of the judgment of conviction but dissent from the reversal of the sentence. The majority recognize the general intent of the legislature, in enacting the Unified Code of Corrections, to abolish all indictable misdemeanors and to establish a uniform sentencing structure. I believe that, more specifically, the legislature intended the sentencing structure to be a comprehensive one classifying all cognizable offenses and providing that the sentence that could be imposed upon conviction be governed by the classification. Thus, when the legislature enacted section 12—4(d) of the Criminal Code stating that aggravated battery is a Class 3 felony they clearly intended that provision to prevail although the former penal provisions for aggravated batteries defined by section 12—4(b) were not deleted.

The majority correctly notes the often cited rule followed in *People v. Isaacs*, 37 Ill.2d 205, 226 N.E.2d 38, that ambiguities in a penal statute should be construed in favor of the accused. In *People v. Hardaway*, 108 Ill.App.2d 325, 331, 247 N.E.2d 626, 629, this court amplified that rule when it stated:

> "And although criminal statutes must be strictly construed, such construction cannot be utilized for the purpose of defeating the legislature's apparent and clear intent. People v. Kirkrand, 397 Ill. 588, 74 N.E.2d 813, 815."

In *People v. Moore*, 324 Ill.App. 109, 57 N.E.2d 511, the predecessor to this court, the then Third District Appellate Court, was called upon to construe the former provisions of the Criminal Code with reference to whether the judge or the jury should impose sentence for the offense of assault with a deadly weapon with intent to do a bodily injury. The statute defining the offense provided that conviction would subject the offender to fine or confinement in the county jail or both "in the discretion of the court." (Ill. Rev. Stat. 1943, ch. 38, par. 60.) Subsequent to the enactment of that penal provision, legislation was passed providing

for a comprehensive system of determining whether the judge or the jury should fix punishment but it was not applicable to misdemeanor cases. Still later, this subsequent act was amended to provide that in cases tried before a jury, the jury should fix the punishment if the prescribed punishment was by way of fine, jail sentence or both (Ill. Rev. Stat. 1943, ch. 38, par. 754a). The court noted that the separate provisions for the judge to fix the punishment and for the jury to do so were inconsistent. After reciting various general rules of statutory construction, the court ruled that the latest enactment showed a clear intent to cover the whole subject of the responsibility for imposing sentence in criminal cases and that the provision for the jury to make the determination, enacted after the provision for the judge to do it, was obviously intended to control.

Article 5 of the Unified Code of Corrections shows a clear intent that every existing offense be classified for it provides in section 5—5—1(a): "The provisions of this Article shall govern the classfication of all offenses for sentencing purposes." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—5—1(a)). The provisions of sections 5—5—1 and 5—5—2 of the article show how that purpose has been accomplished. Subsections (b), (c), and (d) of section 5—5—2 list the types of classification for felonies, misdemeanors and petty and business offenses. Section 5—5—2 is entitled "Classification of Other Offenses." Subsections (a) and (b) of section 5—5—2 each recite that the particular classification of each felony or misdemeanor respectively "is specified in the law defining" the offense. These subsections together with subsection (c) then perform the stated function of the section by setting forth a system of classifying the other offenses, those not classified by the law defining the offense.

Subsection (d) of section 5—5—2 is cited by the majority in further support of their conclusion that the penalties set forth in section 12—4 (b)(6) are applicable in this case. The Unified Code of Corrections was drafted and recommended to the legislature by the Illinois Council on Diagnosis and Evaluation of Criminal Defendants. Robert Kent Scott served as director of that group and reporter for the Code. The council's commentaries revised by him appear in the Smith-Hurd Illinois Annotated Statutes. The council commentaries to section 5—5—2 state that the purpose of the section is to provide "for the classification where it is not designated in the definition of the offense." This is also clear from a reading of the section. The initial words of subsection (d) of section 5—5—2 "Notwithstanding the classification provided for in this Section" thus clearly indicate that the limitation set forth in the subsection is applicable only to classification not specified in the statute defining the offense.

The commentaries to article 5 of the Unified Code of Corrections state,

and a reading of the Code makes obvious, that the purpose of classifying offenses is to have the appropriate sentence determined solely by its classification except for the limitation not here applicable, set forth in section 5—5—2(d). A comprehensive system of sentencing was thus established subsequent to the enactment of the penal provisions of section 12—4(b).

Even though the legislature deleted the penal provisions of subsections (a) and (c) of section 12—4 while leaving those of subsection (b) intact and even though subsection (b) previously and reasonably carried a lesser penalty than subsection (a), I am unable to attach any significance to the foregoing that is not contrary to the clear intention of the legislature. The construction given by the majority that the penal provisions of subsection (b) are applicable is directly contrary to the intent to have a comprehensive system of sentencing based upon classification applicable to all sentences and defeats the admitted intention to abolish indictable misdemeanors. If we consider the type of aggravated battery in question to be a Class 3 felony but subject to the limitations of the penal provisions of section 12—4(b), then the limitations swallow and destroy the classification. If we consider section 12—4(b) types of aggravated battery to be unclassified by subsection (d) of that section, then the offense becomes a Class 4 felony by operation of section 5—5—2(b) of article 5 of the Unified Code. Had the legislature intended this result they would have stated, consistently with the theory of the Unified Code, that this type of aggravated battery is a Class 4 felony rather than choosing such a circuitous route.

I, therefore, consider the offense in question to be a Class 3 felony for which a sentence of 1 to 10 years may be imposed. I would affirm the sentence as well as the conviction.