THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT K. CARMACK, Defendant-Appellant.

Third District   No. 75-86

Opinion filed July 25, 1977.—Rehearing denied August 31, 1977.

984

STOUDER, P. J., specially concurring in part and dissenting in part.

Joseph R. Napoli, of Peoria, for appellant.

Robert A. Downs, State's Attorney, of Lewistown (F. Stewart Merdian, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant, Robert K. Carmack, was charged by indictment with the offenses of mob action and aggravated battery resulting from inflicting bodily harm. After a jury trial Carmack was convicted of both charges and sentenced to concurrent terms of imprisonment of two to six years for aggravated battery and one to three years for mob action.

Both of the crimes charged allegedly occurred in the same incident at the residence of John Kem in Fulton County. Kem was identified as the victim of the attack. He testified that the defendant and four other men entered his home without invitation and confronted him in his dining room. A fight started when the defendant took a swing at Kem with a club he allegedly was carrying. Kem further reported that the fight proceeded into the yard where all five men jumped him and one of them hit him on the head. Kem testified that all five assailants had clubs and that he was chased into his back yard. He claimed he was punched by all of the assailants and threatened with death. His shirt was torn and bloody as a result of the attack. Throughout the ordeal defendant Carmack did most of the talking and threatening, allegedly.

■■■ The first issue defendant raises on appeal goes to sufficiency of the evidence with regard to both offenses. Initially defendant challenges the sufficiency of the evidence because he contends there was no evidence that Kem suffered great bodily harm which is a necessary element of the offense of aggravated battery. Defendant contends that Kem was only struck with some sort of wooden stick or club, and suffered a gash on his head which resulted in some bleeding and which was so minor that Kem did not seek medical attention for it until three days after the incident. The question is not what the victim did or did not do to treat the injury inflicted but what injuries he did in fact receive. The record includes testimony of an osteopathic surgeon who treated Kem and diagnosed his

injuries as a hematoma located on the right side of Kem's head behind the ear, bruising about his right eye, swelling of the back of his neck, and a laceration of the scalp that would have required stitching had Kem gone to a hospital emergency room immediately after the injury occurred. The term "great bodily injury" referred to as an essential element of the offense of aggravated battery is not susceptible of a precise legal definition but it is an injury of a graver and more serious character than an ordinary battery. (*People v. Cavanaugh* (2d Dist. 1957), 14 Ill. App. 2d 573, 152 N.E.2d 266 (abstract).) Ultimately the question of whether a particular injury amounts to great bodily harm (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(a)) is a fact question for the jury. (*People v. Smith* (1st Dist. 1972), 6 Ill. App. 3d 259, 285 N.E.2d 460.) The case of *People v. Newton* (2d Dist. 1972), 7 Ill. App. 3d 445, 287 N.E.2d 485, is similar to the instant case. There the injury inflicted was found to be great bodily harm even though the victim had initially gone to the hospital but left and went to his own doctor's office because the hospital was busy. The jury's verdict with regard to the nature and extent of the injury suffered by John Kem is not so improbable, or unjustified as to suggest a reversal.

■■ Defendant acknowledges that one of the four men with him actually struck Kem on the head, but did so only because the victim was about to strike the defendant with a shotgun. This and other evidence advanced by the defendant to contradict the State's evidence was resolved by the jury against defendant. After reviewing the record, we find that the evidence presented was sufficient to prove defendant's guilt of both aggravated battery and mob action and we will not substitute our judgment for that of the trier of fact who had a better opportunity to observe and view the evidence. *People v. Latham* (3d Dist. 1975), 31 Ill. App. 3d 66, 333 N.E.2d 583.

■■■ Defendant also claims that the trial court committed prejudicial error by refusing his tender of Illinois Pattern Jury Instructions 24.06 and 24.15 on the theory of self-defense. The victim's testimony was that the defendant, among others, struck and injured him. Defendant contended that he did not strike the victim John Kem, but he was struck by one of the other attackers. Though the defendant has the right to have the jury instructed on the law applicable to a particular set of facts even if there is only slight evidence relating to the defendant's theory of the case (*People v. Kucala* (1st Dist. 1972), 7 Ill. App. 3d 1029, 288 N.E.2d 622; *People v. Adcock* (3d Dist. 1975), 29 Ill. App. 3d 917, 331 N.E.2d 573), the record indicates that defendant denied striking the victim at all, and he did not claim that he acted in self-defense. (See *People v. Bratcher* (4th Dist. 1975), 29 Ill. App. 3d 202, 330 N.E.2d 297.) Defendant seeks to establish that although he and the others were the initial aggressors they had abandoned the attack and were retreating; that the victim was beating

defendant with a shotgun and one of the other participants, Bill Goulding, intervened to protect defendant by striking the victim on the head. As was discussed earlier, it is not unlikely, considering the swiftness and intensity of the attack, that none of the participants could give a detailed account of each blow or the injury suffered therefrom. The jury ultimately chose to believe the victim's version, and rejected defendant's claim that he was not accountable for the injury inflicted upon the victim by the other participants. The victim's actions in striking or attempting to strike the defendant or his other attackers was clearly self-defense. Any attempt by the other participants who were the initial aggressors to protect themselves or the defendant cannot be raised to the level of self-defense. Defendant's theory that he and the other participants acted in self-defense or in defense of another person (Ill. Rev. Stat. 1973, ch. 38, par. 7—1) is not available where defendant and the other participants were the initial aggressors. Under section 7—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 7—4), entitled "Use of Force by Aggressor," only a completed withdrawal followed by a new encounter, initiated by the victim, which the court found was not the case here, would allow defendant to avail himself of the theory of self-defense. Absent even slight evidence of self-defense the trial court properly refused the defendant's tendered instructions. *People v. Adcock* (3d Dist. 1975), 29 Ill. App. 3d 917, 331 N.E.2d 573.

■■ Defendant also argues that the jury was not properly instructed on the law relating to aggravated battery. Defendant claims that an instruction defining simple battery should have accompanied the aggravated battery instruction. It has been held that IPI Criminal Instruction No. 11.07 (aggravated battery), is sufficient without an instruction on simple battery. (*People v. Hadley* (4th Dist. 1974), 20 Ill. App. 3d 1072, 314 N.E.2d 3.) In the instant case defendant did not tender IPI Criminal Instruction No. 11.05 and he even objected to its being given. Under these circumstances we believe defendant cannot now raise the issue for review.

■■ Defendant next contends that reversible error occurred when the trial court refused to grant the mutual motions of the State and the defense for joinder of the related prosecutions for trial. Section 114—7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 114—7) provides, "The court may order 2 or more charges to be tried together if the offenses and the defendants could have been joined in a single charge." The defendant and four other men involved allegedly participated in the same comprehensive criminal transaction which resulted in the return of the several indictments against them. From a reading of the statute it is clear that the decision of whether a joinder of related prosecutions should be granted is a matter left to the sound

discretion of the trial court. The record indicates that the reason the trial court denied the motions for joinder was because it believed that Carmack, being the only one of the group of defendants who had a prior criminal felony record, might prejudice the rights of the other defendants if they were forced to be tried with him and if Carmack's prior felony conviction was used for impeachment purposes. The issue thus becomes whether the trial court abused its discretion by denying defendant's motion for joinder. In *People v. Canaday* (1971), 49 Ill. 2d 416, 424, 275 N.E.2d 356, 361, it was aptly stated, "It is clear from decisions of this court that if one or more defendants are jointly indicted they are to be tried together, unless the trial court in the exercise of sound discretion considers that separate trials should be granted." Although the *Canaday* case, unlike the instant case, involved a motion for severance, and provided that the introduction of criminal records of a co-defendant was not per se a ground for severance, we have been shown no prejudice and believe the trial court did not abuse its discretion in choosing to refuse the joinder under the facts of the present case. It is not determinative that the State did not use Carmack's prior conviction for impeachment purposes. There being no abuse of discretion, the denial of defendant's motion for joinder was not reversible error, under the circumstances.

■■ Defendant filed a pretrial motion to change the place of trial pursuant to the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 114—6), accompanied by an affidavit alleging prejudice in the community was such that he could not receive a fair trial. Specifically defendant complained of news items appearing in a local newspaper several months prior to the trial. The trial court denied the motion and proceeded with voir dire. Before opening statements, defendant renewed the motion which was again denied. He now claims it was an abuse of the trial court's discretion to deny the motion. We agree that the trial court cannot capriciously or arbitrarily deny a motion for a change of place of trial. (*People v. Parisie* (4th Dist. 1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310.) Only when the prejudice against defendant in the county is of such magnitude that defendant cannot receive a fair trial need the trial's location be changed. (*People v. Cesarz* (1969), 44 Ill. 2d 180, 255 N.E.2d 1.) Here the defendant failed to exhaust all his peremptory challenges. It seems obvious therefore that even after the voir dire there was insufficient prejudice shown to require a change of place of trial. We believe that the trial court did not abuse its discretion in denying the motion.

■■ Defendant finally contends that the sentence imposed was excessive. We disagree. Carmack was a previously convicted felon and on probation at the time of the commission of the offenses from which he now appeals. The two- to six-year sentence imposed for aggravated

battery was not excessive in light of the nature of the offense charged and the history and character of the defendant. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(4).

■■ The State has conceded in its brief that the offenses of aggravated battery and mob action arose essentially from the same transaction with the result that only one penalty should have been imposed upon defendant. *People v. Ritchie* (3d Dist. 1975), 25 Ill. App. 3d 875, 323 N.E.2d 432; *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.

For the reasons stated the judgment of conviction entered for the offense of aggravated battery and the sentence imposed thereon are affirmed, and the judgment of conviction and sentence for the offense of mob violence are reversed and vacated.

Affirmed in part and reversed and vacated in part.

STENGEL, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, specially concurring in part and dissenting in part:

I respectfully disagree with the majority's conclusion that the defendant was not entitled to instructions on self-defense. The cross-examination of the complaining witness, John Kem, independently as well as in conjunction with the defendant's direct evidence, constitutes more than slight evidence to justify use of self-defense instructions. I do agree with the majority's decision to affirm the trial court's refusal to join all the defendants for one trial, but for reasons different than those announced by the majority.

More than slight evidence regarding defendant's claim of self-defense was introduced both in the testimony of John Kem, the complaining witness, as well as in the testimony of witnesses for the defendant. Indeed, the evidence is abundant from the testimony of practically every witness that Kem was or had become the aggressor at and before the time the blow was struck for which defendant had been held accountable. From the abstract it appears the complaining witness testified to the following:

> "I was the only person who had any firearms which were involved in this incident. I had a shotgun and shot under their feet and told them to leave. I did not hit anyone. My brother-in-law brought out a [second] shotgun after it was all over. I do not recall anything other than firing the shotgun. The shotgun was damaged in that the stock of the shotgun was broken. It was broken over the defendant's head and I did it. I hit the defendant because he was going to beat me up when I told them to get. I guess they don't have to kill me and all that. They was going to get me."

During the cross-examination of Kem, he stated the following:

"I fired at the feet of Carmack and the others and told them to leave. I had extra shotgun shells in my pocket and I fired the gun three times. They weren't going to leave until I started firing the shotgun. The defendant 'defied me with the shotgun.' The defendant had no shotgun but he defied me. He was not leaving and did not appear to have any trouble walking and was walking normally. He was standing there and I fired three times. I broke the stock of the gun over defendant's head before I fired the gun. I fired the gun after cracking the stock on the defendant. The shotgun was loaded at the time I cracked the stock on the defendant. When I hit the defendant with the stock of the shotgun breaking it on his head, it did not knock the defendant down and it did not stop him from 'running his mouth.' "

I believe this testimony alone presents sufficient evidence to justify use of self-defense instructions requested by the defendant. Yet, further testimony was introduced supporting the defendant's position that he acted in self-defense.

Keith Powers, one of the individuals accompanying defendant to talk to Kem about a beating Powers had allegedly received from Kem, testified that only defendant and himself entered the house through a front door which was already ajar. When Powers and the defendant entered the dining room, John Kem came out of the kitchen yelling at them to leave the house. Kem then ran upstairs and after he returned with a double-barreled shotgun, Powers and defendant left. According to Powers, Kem followed them outside and fired the shotgun twice at defendant's feet. The defendant was limping toward the car when the shots were fired. Kem then ran after defendant and upon catching him, Kem jammed the barrel of the shotgun into defendant, and then hit defendant several times with the stock of the gun causing him to fall to the ground. While the defendant was on the ground, Kem continued to hit him. As Kem was striking the fallen defendant, Bill Goulding came up and struck Kem across the head with some sort of a stick. It was this blow by Goulding for which defendant was convicted of aggravated battery under an accountability theory. No evidence was ever introduced indicating that defendant struck the victim. Bill Goulding's whereabouts were unknown and he did not testify at trial.

According to defendant, he and Powers entered the Kem residence when the door came open upon knocking. After defendant heard someone running upstairs, he and Powers went out on the front porch. Kem came out with a shotgun and told both of them to leave, which everyone did except Powers, who froze at the bottom of the steps. While defendant was leaving, Kem fired both barrels of the shotgun at

defendant's feet. Kem ran at defendant and began swinging at him with the shotgun. After defendant had warded off two blows with his arm, he received a third blow to the head and fell to the ground. Defendant testified that while he was on the ground someone hit Kem. Due to his position on the ground, defendant was unable to identify the person who had hit Kem. Defendant then saw Kem run away. Defendant denied that he or anyone with him had any clubs.

The third defense witness related substantially the same facts as told by Powers and defendant. A police officer called by the State observed no clubs in the possession of defendant or on or about the premises when he arrived upon the scene shortly after the alleged offense.

It is clear from the foregoing that the evidence is in conflict as to whether the defendant or other members of his party were initially the aggressors, but the evidence is also in conflict as to whether Kem was the aggressor prior to receiving the blow. However, it is the relationship of the parties, *i.e.*, aggressor or victim, just prior to the incident which determines whether a party is acting in self-defense and it is immaterial that he might have been the aggressor at some earlier stage in the controversy.

I believe the evidence related above far surpasses the minimum standard of "slight evidence" which must exist before the defendant is entitled to instructions on his theory of defense. I have no disagreement with the slight evidence rule stated in *People v. Adcock*, 29 Ill. App. 3d 917, 331 N.E.2d 573, but my colleagues have failed to correctly apply its teachings. Defendant was entitled to instructions on self-defense.

The majority concedes the evidence was in conflict and then suggests the result is correct because the jury choose to believe the complaining witness. As observed by the majority: "This and other evidence advanced by the defendant to contradict the State's evidence was resolved by the jury against defendant." While this observation was not directed to the issue of self-defense and the propriety of an instruction on such issue, it does recognize that a conflict existed without disclosing the nature of the conflict from defendant's point of view or his theory of defense. Again the majority observes: "As was discussed earlier, it is not unlikely, considering the swiftness and intensity of the attack, that none of the participants could give a detailed account of each blow or the injuries suffered therefrom. The jury ultimately choose to believe the victim's version and rejected defendant's claim that he was not accountable for the injury inflicted upon the victim by the other participants." This merely begs the question. The issue is not whether self-defense is established as a matter of law, but whether the evidence supports the defendant's theory of defense, thereby entitling him to have the jury instructed on his theory of defense. If the jury was not properly instructed on defendant's theory of

defense, then it is difficult to see how conflicts in the evidence could be properly resolved by the jury.

I believe the majority misconstrues the defendant's position when it states that defendant claims to be an aggressor who was retreating and therefore acting in self-defense. It is clear from the defendant's own testimony as well as other defense witnesses, that defendant is not claiming self-defense as a retreating aggressor, but rather self-defense as the victim of someone else's prior and original aggression. With the testimony of three witnesses supporting such a theory, I find it difficult to comprehend how my colleagues state that no evidence was presented on self-defense.

It is apparent from the conference on instructions, that the trial court did not refuse to give self-defense instructions because of a lack of any evidence to support the instructions. Instead the court offered the following in refusing the instructions:

> "Gentlemen, I believe, in this particular case, under the circumstances, the facts show that this [self-defense instruction] would only confuse the jury by giving these instructions, but if we give—I am talking about 24.06, [IPI Criminal No. 24.06] now—if we give that, then you will want to give 24.15, [IPI Criminal No. 24.15] and in order to give that it specifically says it should be given with certain other instructions. I am going to refuse them both. I think if you give—would give the one, and then the others would want more, and the next thing we would have is the thing which we have here, and I think there is enough in this case."

It is undisputed that if there is slight evidence to support a theory of defense a defendant is entitled to have the jury instructed on that theory, whether one or ten instructions are called for.

The decision of the trial court to refuse the self-defense instructions because of the necessity of giving other instructions which might be confusing, related to the court's ideas about deciding which of the parties was the aggressor. The trial court adopted the view shared by the majority that the defendant and his associates were aggressors as a matter of law at all times related to the occurrence. In fact, the trial court considered that by merely entering onto the premises of the complaining witness, defendant and his associates became aggressors and their status could not and did not change. The trial court did have some doubts about this matter since it realized that the complaining witness was not entitled to use any amount of force and also that the defendant and his party might be justified in resisting the action of the complaining witness. By removing the issue of self-defense from consideration by the jury because of its unwillingness to instruct the jury regarding who might be considered the aggressor and the appropriateness of any response thereto,

the court removed a substantial theory of defense from being an issue in the case. In other words, the court held as a matter of law the complaining witness was justified in shooting at the defendant and breaking the stock of his shotgun over the head of Carmack. According to the trial court and the majority, any resistance to such actions was legally unjustified as a matter of law. Although the majority say there was no evidence of self-defense, they do so by holding as a matter of law that defendant was an aggressor notwithstanding substantial evidence to the contrary. The conduct of defendant and particularly his associates was in response to the force employed by the complaining witness. Such conduct could not according to the majority, constitute justifiable actions or self-defense. I do not share this view of the majority that mere entry onto a premises irrevocably characterizes those persons entering as aggressors, thereby justifying any and all forceful conduct which the possessor of the premises might choose to employ. I think the defense had the right to be instructed on its theory of the case and the issue of who was the aggressor at the time the complaining witness received the blow was a jury question and the jury should have been instructed on it even though additional instructions would have been required. I do not believe or intend by this opinion to suggest that defendant and his associates were acting in self-defense as a matter of law anymore than I believe it proper to characterize them as aggressors as a matter of law.

The only argument advanced by the State to justify the trial court's refusal to give the self-defense instruction seems to be that it could not be self-defense where the actual blow or blows were struck by some third party in an effort to protect the defendant. An accountability instruction was given as requested by the People which, so far as applied to the evidence, asserted that by necessary implication the defendant could be found guilty because of acts and conduct of others. It should be noted that the People offer no support for their thesis that defendant may not claim self-defense when being protected by a third party.

If, as here, a defendant is to be held accountable for the action of a third party, it seems to me that the action of the third party and the defendant must be considered together. Whether or not the affirmative defense of self-defense exists should not turn upon who struck the blows. What is important and I believe the determining factor, is whether the blows claimed to be done in self-defense were struck in response to an initial aggression or did they represent the initial aggression itself. To me, the foregoing recognizes and implements the tenets upon which the entire theory of self-defense is based. It should be noted that section 7—1 of the Criminal Code of 1961 concerning self-defense (Ill. Rev. Stat. 1975, ch. 38, par. 7—1) does not limit self-defense to an individual defending himself, but extends as well to others defending that person.

My remaining concern relates to the issue of joinder. While several Illinois cases hold that a prior felony conviction on the part of a co-defendant is not grounds for severance, and hence conversely should not be a reason to deny joinder, I believe the better rule is that a prior felony conviction of a co-defendant who may testify at a joint trial is sufficiently prejudicial to the rights of the other co-defendants that severance should be granted or joinder denied. The trial court appears to have adopted such a position in denying defendant's motion for joinder, especially when one recalls that joinder is the general rule in circumstances such as here and severance for separate trials is the exception.

A prior felony conviction of a co-defendant can be used only for impeachment of that co-defendant and is inadmissible against any other defendants for any reason whatsoever. When the singular propriety of the use of the prior felony conviction for the limited purpose of impeachment of one defendant is weighed against the improper prejudicial effect the record of conviction will have on other co-defendants, the scales must tip in favor of severance or denying joinder. I believe the rationale expressed by the trial court was proper and should be adopted as the rule in this State. The majority of the court have failed to follow the opposite rule which was applied in *People v. Canaday*, 49 Ill. 2d 416, 275 N.E.2d 356, and *People v. Brown*, 36 Ill. App. 3d 416, 343 N.E.2d 700, and by necessary implication have overruled the reasoning in those cases, a result with which I agree. In summary while I believe the trial court was correct in denying joinder, it erred in denying defendant's self-defense instructions and the cause should be reversed and remanded for a new trial.